BANKS, Justice,
for the Court:
Here we revisit the question of the scope of proceedings had to determine whether a prisoner shall be allowed to proceed in forma pauperis. We conclude that the hearing was allowed to progress beyond the limited scope of such proceedings. For that reason, we reverse and remand for further proceedings.
I
On December 7, 1990, James Rougeau (Rougeau), prisoner in the Mississippi Department of Corrections, filed his complaint against state prison employees Captain Shepard, Sgt. Joe Errington, Sgt. A. Bre-land, Officer James Walley, and Officer Lewis Crawford alleging that pursuant to orders from Shepard, the remaining defendants entered his cell and removed the following items of personal property belonging to him: one writing pad, one envelope addressed to WLOX TV 13 with important legal information inside, nine cassette tapes, three pages of a legal statement, one speaker jack for a TV, and one Emerson model CRR 100 am/fm cassette player with one set of Nova head phones. Rougeau sought return of the items or the sum of $305.56 as the fair value thereof.
Rougeau attached to his petition an affidavit reciting that because of his poverty, he was not able to pay the costs of the suit.
On December 17, 1990, Circuit Court Judge Darwin Maples entered an order reciting that prior to accepting the case for filing in forma pauperis, the court felt that inquiry must be made as to the inmate’s financial status and any possible merit to the case. The order directed the circuit court judge (himself) to investigate the inmate’s financial status and to hold a hearing to determine whether there is merit to the complaint. A notice was issued by the circuit clerk reciting that a status conference and evidentiary hearing under Spears v. McCotter was scheduled for hearing on January 30, 1991. The notice recited, inter alia, the following:
In addition to the usual status conference, an evidentiary hearing in the nature of a motion for a more definite statement will be held utilizing the procedure approved in Spears v. McCotter, 766 F.2d 179 (5 Cir.1985). At the hearing only the plaintiff will give live testimony. No other witnesses will be allowed.
When the court convened for the January 30 hearing, no inquiry was conducted concerning the financial status of the prisoner, but the hearing immediately focused on the allegations of Rougeau’s complaint. The following colloquy between the court and Rougeau appears in the record:
BY THE COURT: Are you saying that somebody here in the Department of Corrections took your property?
BY MR. ROUGEAU: Yeah. They checked my cell down. I had a tape player. I admitted to classifications that I had used the tape player to get their *1229 confessions. They did kick me down and break my ribs and stuff. I have a lawsuit in Federal Court against them. They did a shakedown on my cell and took all my property. I filed a grievance on it and got the grievance back stating that the property would be returned but the tape player could not be returned. All right. Then I questioned the guard in the unit. He said he called over there and the investigations the property supposed to be turned over to, and the property was never turned over to investigations. He didn’t know what happened to the property.
BY THE COURT: This is a complaint. You are wanting this property returned to you?
BY MR. ROUGEAU: Yes, sir, if I can have it mailed to the house.
BY THE COURT: Mailed to your house?
BY MR. ROUGEAU: Yes, sir.
The court then turned the prisoner over to defense counsel who proceeded with cross-examination as follows:
EXAMINATION BY MR. VINCENT:
Q Now, Mr. Rougeau, the tape player that you had, you know that in the rule book it says you can’t have anything that records. But you went and broke the rules and made it so this one would record?
A No, the tape player I received in the mail wasn’t disconnected so is (sic) it wouldn’t record. I recorded from the start when they sent it to me. They let it come through the system. When I brung it down here, Mr. Cabana and another officer — I had two cassette players with me. They said as long as I had earphones I could have both tape players.
Q You knew you couldn’t have anything to record on because the rule book tells you you can’t?
A Yes, sir.
Q You know that is contraband, and when contraband is confiscated it is not given back to you or your family. It’s destroyed. You knew that?
A No. None of it was explained to me that way, that they take it from you and destroy it.
* *****
Q [B]ut you do agree if contraband comes in, no matter how, it is destroyed?
A Not under the point that when the institution gives you the merchandise and then turn around and destroys it.
* ¡je % He * *
Q And the cassette tapes that you had, those were tapes that you made of officers without their knowledge; is that correct?
A Yes, sir.
Q And you knew you couldn’t do that, didn’t you?
A If it was the only way I could prove they jumped on me and broke my ribs and stuff and sent me to the hospital.
* * * * * *
Q Do you agree with me that according to the rules you can’t record other people here without their knowledge or even with their knowledge?
A Yes.
Q So you were going against the rules. Is that correct?
A Uh, yeah.
* * # * # *
Q Actually, what you are talking about then is a pad with some addresses of television stations, an envelope addressed to Channel 13, a letter to Mr. Cabana, three pages of statement, and a homemade speaker jack. That’s the things you are complaining about now. Is that correct?
A Yes, sir.
Q Could you tell me what the value of those things are?
A It would come to — if you have to go buy them, it would come to about three hundred and five dollars.
Q I’m not asking about the cassette player. What would the pad cost? If it is a State pad, it didn’t cost you anything.
A Sixty-two cents.
*1230 Q The envelope. How much was it?
A The envelope, probably legal envelope — probably twenty-five cents.
Q That’s about a dollar. The letter to Mr. Cabana, did you write it on State paper?
A The envelopes they was contained in legal paperwork. The officer had come in the cell and took other legal paperwork I had filed in Justice Court.
Q So the value of that, though, would be less than ten dollars, wouldn’t it?
A No. The legal paperwork?
Q Yes?
A It would, to my knowledge the time and effort to go have it done and everything, it would be way over a hundred dollars.
Q All right. So it would be worth a hundred dollars then. How much do you charge an hour on legal work? What’s your usual rate per hour?
A My rate?
Q You said it was worth one hundred dollars?
A Yes. For my time and effort going over there and looking up everything in the book.
On February 15,1991, the court rendered the following order:
The Court having held a Spears hearing and the plaintiff having testified and been cross examined by counsel for the defendants, the following evidence was presented.
The plaintiff had property taken from him by defendants that was, according to the Inmate Handbook,[1] contraband and that such contraband was to be destroyed if found in the possession of an inmate. The plaintiff testified that property that was not contraband was also taken to-wit: a writing pad, envelope and a three-page statement. He alleges that the worth of these items to be “around one hundred dollars ($100.00).”[2]
The Court is of the opinion that the plaintiffs value of his items is more than generous, but still does not meet the jurisdictional limit of this Court according to Section 9-7-85 of the Mississippi Code of 1972 as amended and therefore, this case whould (sic) be dismissed with prejudice.
Aggrieved, Rougeau appeals contending:
(1) The evidentiary hearing conducted by the trial court exceeded Spears-McCotter limitations; and
(2) The trial court erred in allowing defense counsel to examine Rougeau during the hearing.
II
The issues presented in this cases are controlled by Blanks v. State, 594 So.2d 25 (Miss.1992). In Blanks, a state prisoner filed a sworn pleading against correctional officers alleging that he was assaulted for no apparent reason. The trial judge issued an order directing the magistrate of the Fourth Circuit Court District to investigate the inmate’s financial status and to hold a hearing to determine whether there was merit to the complaint. The magistrate utilized the federal procedure approved in Spears v. McCotter. The magistrate’s findings and recommendations stated that the claim presented no arguable facts or legal basis to proceed to trial and recommended that the case be dismissed with prejudice. The trial court judge adopted the magistrate’s findings and recommendations and dismissed Blanks’ complaint with prejudice. On appeal, this Court reversed and stated:
Our statutory law provides for the redress of the grievances of indigent persons in the same forums, at least through trial, as those enjoyed by persons more fortunate. Miss.Code Ann. § 11-53-17 (1972). The procedure is simple. A plaintiff need only assert by affidavit that “because of my poverty I am not able to pay the costs or give security *1231 for the same in the civil action (describing it) which I am about to commence ... and that, to the best of my belief, I am entitled to the redress which I seek by such suit.” Id. It is also clear that the court may dismiss such an action if it is satisfied that the allegation of poverty is untrue. Miss.Code Ann. § 11-53-19 (1972). Just as any other pleadings, actions brought pursuant to this statute are subject to our rules, particularly Rules 3 and 11, Mississippi Rules of Civil Procedure.
Rule 3(c) MRCP provides that the court may on its own motion examine an affiant alleging pauperism as to the facts and circumstances of his financial condition. If the action is to be dismissed on the basis that the affidavit is untrue that finding should be based on evidence preserved in the record. Feazell v. Staltzfus, 98 Miss. 886, 54 So. 444 (1910). Where the court conducts a hearing to determine the issue of poverty, it is entirely reasonable and in the interest of judicial economy that the pleading also be examined and the affiant questioned to determine whether the action is frivolous and, therefore, subject to dismissal pursuant to Rule 11 MRCP. Thus the so-called Spears hearing, usually employed in pro se prisoner in forma pau-peris complaints, is consonant with our law.
One purpose of the “Spears” hearing is to determine whether or not the prisoner should be permitted to file and proceed on his complaint in forma pauper-is. Another purpose is to determine whether the inmate’s complaint suffers from frivolity. If the complainant is not a pauper and fails to pay a cost deposit as required by Rule 3(a) MRCP or the complaint is frivolous, process need not be issued. In this event, there would be no occasion for the defendants to file an answer to the prisoner’s complaint.
In the case at bar, the evidence before the magistrate reflected that Blanks was indeed a pauper. We conclude, however that the prisoner’s complaint was not frivolous and so insubstantial as to not require the defendants to answer.[3] The magistrate, after evaluating the prisoner’s complaint and the testimony proffered by Blanks during the Spears hearing, mistakenly concluded his factual allegations and legal conclusions were frivolous. This conclusion is clearly erroneous.
“[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact. * * * [The] term ‘frivolous,’ when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful [and farfetched] factual allegation.” Neitzke v. Williams, [490 U.S. 319, 325, 109 S.Ct. 1827, 1831] 104 L.Ed.2d [338] at 347. The Court was interpreting the federal in forma pauperis statute which explicitly provides for dismissal where the court is satisfied that the action is frivolous or malicious. 28 U.S.C. § 1915(d). We have defined “frivolous” in the context of a pleading scrutinized for Rule 11 MRCP purposes as one with “no hope of success.” Tricon Metals & Services, Inc. v. Topp, 537 So.2d 1331 (Miss.1989).
Blanks v. State at 28-29.
Blanks answers the issues in this case. First, the trial court did not err in allowing defense counsel to cross-examine Rougeau for the limited purpose of the procedure. On the other hand, the trial court erred in going beyond the second step of a Spears hearing and dismissing the prisoner’s action because it found part of the property was “contraband” not allowable as part of the claim. These are matters which should be developed after the State files its answer. That is not to say that a court is powerless to dismiss a complaint on its own motion where it appears on the face of the complaint, or after *1232 limited inquiry regarding the facts of inart-fully drawn pleadings, that the court is without jurisdiction. Here, however, the complaint alleged, in good faith, an amount in controversy sufficient to confer jurisdiction on the court. While the actual amount in controversy was subject to dispute after evidentiary development, summary conclusions based on regulations not in evidence at a hearing where no notice is given that the issue will be raised are inappropriate. The claim here involved is not frivolous on its face under our articulations and the authorities cited in Blanks. Spears-McCotter hearings are not explicitedly authorized by our state statutes or court rules. It is a federal procedure consonant with our law given approval in Blanks for a limited purpose. We áre not willing to piggyback additional procedures exceeding the expressed, limitations.
Ill
This cause is reversed and remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and McRAE, JJ., concur.
ROBERTS, J., not participating according to Supreme Court Internal Rules.

. No copy of the handbook or its applicable provisions were introduced and the only reference to the handbook rules is set out in the testimony of Rougeau.

. The court does not mention and the record is absent any proof of the value of the speaker jack.

. The Supreme Court of the United States has modified Spears, holding that a complaint filed under 42 U.S.C. § 1983 in forma pauperis which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not automatically frivolous within the meaning and purview of the federal in forma pauperis statute, 28 U.S.C. § 1915(d), which reads in part as follows: "The court may ... dismiss the case ... if satisfied that the action is frivolous or malicious." Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).