647 So.2d 678 (1994)
Raymond BILBO
v.
Morris L. THIGPEN, Commissioner, Mississippi Department of Corrections, Donald A. Cabana, Superintendent, Mississippi Department of Corrections, Dr. Niceno Cabanero, Dr. Dave Newton, and Dr. Millard Cox.
No. 91-CA-00255.
Supreme Court of Mississippi.
December 8, 1994.
*679 Raymond Bilbo, pro se.
Michael C. Moore, Atty. Gen., John L. Clay, Sp. Asst. Atty. Gen., Jackson, Leonard C. Vincent, Parchman, Kimberly J. Washington, College Park, GA, for appellees.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
*680 DAN M. LEE, Presiding Justice, for the Court:
This appeal arises from the February 15, 1994, pre-trial Order of the Greene County Circuit Court dismissing the pro se prisoner in forma pauperis civil rights complaint of Raymond Bilbo in which he sought monetary damages from the Defendants. We find that since the complaint was legally insufficient as a matter of law, the trial court judge did not err in dismissing the complaint because: (1) pursuant to M.R.C.P. Rule 12(b)(6), the complaint failed to state a claim upon which relief could be granted; and (2) after an evidentiary hearing, the complaint was deemed frivolous.
We take this opportunity to explain the utilization of a Spears[1] evidentiary hearing during a pro se prisoner in forma pauperis case, and the concomitant standard to be applied at the trial level, as well as the proper appellate standard of review.

I.
Since this case was dismissed before trial, a review of the proceedings leading up to the dismissal is warranted.
The Civil Rights Complaint of the plaintiff, Raymond Bilbo, was filed pro se in forma pauperis, alleging conditions, conduct, and/or omissions constituting cruel and unusual punishment in a Mississippi prison facility while Bilbo was an inmate at that prison.
In his complaint, Raymond Bilbo ("Bilbo") stated that, upon his conviction for grand larceny, burglary, and armed robbery, he was housed at the Mississippi State Penitentiary at Parchman, Mississippi, on or about February of 1983. He further stated that he was in generally good health, with no communicable diseases, until he was diagnosed with tuberculosis in May of 1986 while in custody at Parchman. The complaint alleged that Fredrick S. Marks ("Marks") was a fellow inmate housed in the same building with Bilbo. His complaint also stated that Marks was diagnosed with the tuberculosis virus ("inactive tuberculosis") on or about October 25, 1985, and as a result of his exposure to Marks, Bilbo contracted the "inactive" tuberculosis virus.
In substance, Bilbo asserted that all five defendants, Morris L. Thigpen, Donald A. Cabana, Dr. Niceno Cabanero, Dr. Dave Newton, and Dr. Millard Cox, had knowledge of the contagious tuberculosis of Marks. Bilbo further alleged that after acquisition of such knowledge, the defendants failed to provide proper care, housing, and medical treatment, which Bilbo suggests would have prevented him from contracting inactive tuberculosis.
Injunctive relief was not requested by Bilbo. Instead, he requested, inter alia, compensatory damages in the amount of six hundred twenty-five thousand dollars ($625,000.00) from each defendant, and punitive damages in the amount of one hundred thousand dollars ($100,000.00) from each defendant.
An answer was filed on behalf of Cabana, Cabanero, and Newton which admitted that Bilbo was an inmate at the penitentiary, that he tested positive for the tuberculosis virus, albeit "inactive," in May of 1986, and that the Mississippi Department of Corrections was to provide adequate housing and medical care to inmates. The Answer denied the remaining substantive allegations of the complaint, including a denial that Bilbo was in good health and free of any communicable diseases prior to his incarceration. Those defendants affirmatively plead that the complaint failed to state a claim upon which relief could be granted and that the defendants were immune from the cause of action.
Initially, on July 25, 1989, because of the burden on the court from frivolous actions filed by inmates, the circuit court rejected Bilbo's request to proceed in forma pauperis, ordering him to pay certain fees. Nevertheless, Bilbo continued the litigation, conducting discovery through interrogatories, requests for production of documents, and requests for admissions throughout the pendency of the matter.
*681 Bilbo relentlessly asserted that he was a pauper pursuant to Miss. Code Ann. § 11-53-17 (1972), and that he was entitled to court-appointed counsel. In so doing, he filed four (4) legal documents with the lower court: two (2) petitions; and two (2) motions, each alleging that he was a pauper. In one of his motions and briefs which he filed with the lower court, Bilbo requested that, since he was an indigent, the court should consider appointing counsel to represent him if his claim was not frivolous.
Bilbo then made a "Motion for a Pre-Trial Conference" on December 20, 1990. He followed that motion with the filing of a "Petition for Writ of Mandamus" on January 2, 1991. The petition contained a "new" affidavit of poverty, claiming that Bilbo was a pauper pursuant to Miss. Code Ann. § 11-53-17 (1972).
In apparent response to Bilbo's repeated claims of pauper status, his "Motion for a Pre-Trial Conference," and his request for court-appointed counsel, a status conference and Spears evidentiary hearing were noticed for January 30, 1991.
The status conference and evidentiary hearing were held as noticed. At the conclusion of the hearing, counsel for the defendants made an ore tenus motion to dismiss the action. No ruling was made on the motion to dismiss at the hearing. Instead, the judge stated that he would render an opinion at a later time.
Subsequently, Bilbo filed a Motion for Rehearing on February 5, 1991. Nevertheless, the circuit court judge dismissed the case by Order dated February 15, 1991.
Following the dismissal of his case, on February 25, 1991, Bilbo filed a document entitled "Objection to Defendants Attorney's Oral Motion to Dismiss Plaintiff's Complaint." The document requested a court date and a grant of various requested relief.
Finally, on February 27, 1991, Bilbo filed a "Notice of Appeal" and a "Motion for Leave to Proceed on Appeal In Forma Pauperis," accompanied by an affidavit of poverty[2]. Bilbo's statement of the issues raised on appeal often lack clarity or do little more than allege conclusions. Those statements of issues are accurately quoted hereinbelow:
(1) Lower Court error in giving Appellant a Spears v. McCotter hearing, when Appellant was placed on the witness stand and could not cross-examine defendants of the case.
(2) Lower Court error in dismissing Appellant's complaint against Appellee Doctor Cox for not answering the complaint as ordered by the lower court and dismissing Appellant's default against Appellee Cox.
(3) Lower Court error in dismissing Appellant's Complaint when Appellant was in the housing unit with a person that has a communicable disease.
(4) Appellees took no steps to prevent the outbreak of the active tuberculosis virus.
(5) It is the duty and responsibilities of the Appellees that the Appellant be protected from contracting disease from fellow inmates.
(6) Appellees did not have a policy to check inmates for any communicable diseases.
(7) Appellees also knew that the Appellant was at a high risk to be infected with tuberculosis because of the ventilation system.

II.
The conduct and conditions which were the subject of Bilbo's complaint arose out of exactly the same factual setting and conduct previously complained of by another Parchman inmate, Alan McFadden ("McFadden"). At this point, it should be noted that Bilbo, McFadden and Marks were all fellow inmates at Parchman. They were housed together in the same building at the time that Marks was diagnosed with active (contagious) tuberculosis, allegedly exposing Bilbo and McFadden to tuberculosis.
*682 McFadden filed his complaint in May of 1986  prior to the case sub judice. Therein, he named numerous defendants which he asserted were liable for his alleged contraction of tuberculosis from Marks. The case initiated by McFadden, Alan McFadden v. State of Mississippi, William A. Allain, Governor; Rice P. York, M. Lee Graves, Roland Weeks, Jennifer Buford, and C. Michael Malski, Members, Mississippi Board of Corrections; Donald Cabana, Superintendent, Mississippi State Penitentiary; Dave Newton, Prison Physician; Niceno Cabanero and Millard Cox, Physicians at Mississippi Department of Corrections (MDOC) Hospital; Donald Williamson, Mississippi Department of Public Health; and John Doe, Medical Person, MDOC Hospital; Mississippi Department of Corrections; and Mississippi Board of Corrections, 542 So.2d 871 (Miss. 1989), was subject to a pre-trial dismissal by the trial court. McFadden appealed that dismissal to this Court, and we decided the case on February 1, 1989.
All of the defendants in McFadden, except five, were dismissed from that case. The five remaining defendants were Morris L. Thigpen, Commissioner, Mississippi Department of Corrections, Donald A. Cabana, Superintendent, Mississippi Department of Corrections, Dr. Niceno Cabanero, Dr. Dave Newton, and Dr. Millard Cox. Those remaining five defendants are exactly the same defendants sued by Bilbo in the case sub judice.
The McFadden case was remanded to the lower court in February of 1989, for further proceedings regarding the aforementioned five defendants. But, that case remains on the docket of the lower court because of numerous orders for continuance granting such motions by the plaintiff, McFadden. Consequently, no decision on the merits has ever been reached in McFadden because the case has not gone to trial since it was remanded to the lower court.
Less than six months after McFadden was remanded, Bilbo initiated the case sub judice by filing his complaint in the Circuit Court of Greene County, Mississippi. Therein, he alleged identical circumstances of exposure to Marks, and subsequent contraction of tuberculosis, occurring at identical time(s) as those complained of in McFadden.
However, there are two substantial variations between the case sub judice and McFadden. First, only the five defendants who were not dismissed from the McFadden case were named as defendants in the case sub judice (i.e., Bilbo failed to name the Mississippi Department of Corrections or the Mississippi Board of Corrections as defendants).
Second, the procedural posture of the case sub judice is different. In McFadden, the allegations of the plaintiff's complaint were never investigated before the pre-trial dismissal of that case, necessitating a remand to the lower court. However, in the case sub judice, Bilbo's conclusory allegations were explored at a Spears evidentiary hearing. At that hearing, Bilbo was questioned and allowed to elaborate upon his conclusions in an effort to demonstrate how his alleged injury was caused by acts or omissions on the part of the named defendants.

III.
Bilbo's complaint was titled "CIVIL RIGHTS COMPLAINT." It alleges, in conclusory fashion, that the defendants in their official capacity or connection with the State of Mississippi, failed to provide proper housing, care, and medical treatment to Bilbo, an inmate housed at a State prison facility. As such, Bilbo alleged state action giving rise to an asserted Eighth Amendment claim.

A. SPEARS HEARINGS

1. Origin
The Spears hearing takes its name from the case of Spears v. O.L. McCotter, Director, Texas Department of Corrections, 766 F.2d 179 (5th Cir.1985). In that case, a prisoner, proceeding pro se, filed suit in the United States District Court for the Southern District of Texas, against the Director of the Texas Department of Corrections, and others, claiming that he had been subjected to cruel and unusual punishment. The District Court referred the case to a magistrate for an evidentiary hearing. After conducting the evidentiary hearing, the magistrate recommended *683 that the suit be dismissed. Subsequently, the District Court adopted the magistrate's recommendation and dismissed the suit.
On appeal, the United States Court of Appeals for the Fifth Circuit explained that the function of the hearing employed in the lower court was the functional equivalent to "a motion for a more definite statement." The Fifth Circuit stated that:
For a number of years the courts have used questionnaires to assist trial judges to bring into focus the factual and legal bases of prisoners' claims. We have referred to such questionnaires as being "in the nature of a motion for a more definite statement" under Fed.R.Civ.P. 12(e). Watson v. Ault, 525 F.2d [886] at 892 [5th Cir.1976]. The prisoners' answers to such questionnaires elaborate on the allegations contained in their complaints.... We see no reason why a district court may not, in lieu of such questionnaires, refer the case to a magistrate to hold an evidentiary hearing "in the nature of a motion for a more definite statement." The magistrate's findings and recommendations should prove of greater aid than a prisoner's written answers on a questionnaire, in the determination of whether a claim is frivolous. We are aware of neither constitutional nor statutory infirmity in such a procedure.
Spears v. McCotter, 766 F.2d 179, 181 (5th Cir.1985).
The Fifth Circuit held that the District Court's action was proper when it referred the case to a magistrate for an evidentiary hearing to investigate whether the prisoner's complaint was frivolous and should be dismissed. The Fifth Circuit stated:
We perceive no difficulty with the magistrate conducting a hearing to determine the specificity of a Spears' claim leading to a recommendation of a dismissal of the defined claim as frivolous... . If a prisoner's petition relating to conditions of confinement contains only conclusionary allegations, notwithstanding a timely prayer for a jury trial reference to a magistrate to determine the factual basis of such allegations may be proper. ... [T]he trial court may refer the case to a magistrate to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim. This inquiry perforce involves focusing precisely on a prisoner's factual allegations, puncturing the conclusion balloon in which they may at first be lodged.

Spears, 766 F.2d at 180-81 (emphasis added).

2. Spears and Mississippi Law
The utilization of Spears hearings have not been limited to the federal courts. In approving and ratifying the implementation of Spears hearings in the lower courts of this state, we previously stated that, "the so-called Spears hearing, usually employed in pro se prisoner in formal pauperis complaints, is consonant with our law." Blanks v. State, 594 So.2d 25, 28 (Miss. 1992). Confirming the employment of Spears hearings in Mississippi courts, in a subsequent case, we stated that, "Spears-McCotter hearings are not explicitly authorized by our state statutes or court rules. It is a federal procedure consonant with our law given approval in Blanks for a limited purpose." Rougeau v. Shepard, 607 So.2d 1227, 1232 (Miss. 1992).
Our opinion in Blanks further validated the purposes of such hearings, stating that, "[o]ne purpose of the `Spears' hearing is to determine whether or not the prisoner should be permitted to file and proceed on his complaint in forma pauperis. Another purpose is to determine whether the inmate's complaint suffers from frivolity." Blanks, 594 So.2d at 28 (Miss. 1992) (emphasis added).
In the lower courts of Mississippi, Spears hearings may properly be implemented to determine if the inmate's complaint is frivolous and whether the case should proceed. Therefore, the procedure utilized by the lower court in the case sub judice was authorized by our prior cases.

B. PRE-TRIAL DISMISSAL

1. The Evidentiary Hearing
At the Spears hearing, Bilbo was asked about each defendant's conduct. In response, *684 Bilbo could not present or refer to any evidence which indicated that any of the defendants were responsible for housing Bilbo and Marks together, or that any of the defendants previously possessed knowledge that Marks had contagious tuberculosis while he was being housed with Bilbo. Bilbo also stated that he did not have contagious/active tuberculosis, but that he did have the tuberculosis virus. Further, when asked if he previously had tuberculosis, Bilbo replied that he did not know the answer to that question.
At the conclusion of Bilbo's Spears hearing, counsel for the defendants made an ore tenus motion to dismiss the case. The following colloquy transpired:
BY THE COURT: [A]nyway, do you have anything else?
BY MR. VINCENT: Come now the Defendants, by and through counsel, including Defendant Cox, and move the Court to dismiss this action. And in support or that motion, would show the following: that Mr. Bilbo's complaint must fail because the damage he complains of, he said under oath that he doesn't have T.B. The claim isn't right [sic] for hearing at this point because he hasn't received the damage. Further, he agrees there is nothing he would be able to give, or any evidence to present that any of these people had any acts or omission which would cause any damage to him if, in fact, he had any damage.
BY THE COURT: All right. I will render an opinion later.

2. Basis of Dismissal
Two weeks after the evidentiary hearing, the circuit court judge entered an order dismissing Bilbo's claim. However, the order did not state whether the pre-trial dismissal was based upon M.R.C.P. Rule 12(b)(6) (failure to state a claim upon which relief could be granted), or because Bilbo's complaint was deemed frivolous. The Order dismissing the complaint stated, inter alia, that "[t]he Court held a Spears hearing and the evidence given was that plaintiff does not have tuberculosis [disease], but could get it at a later time, further that the testimony of the plaintiff was that he knew of no acts or omissions of the defendants, or any of them, that proximately caused him damage."
Since the Order dismissing the complaint did not specify the procedural basis for dismissal, both potential methods of pre-trial dismissal require analysis. Nevertheless, as discussed infra, pre-trial dismissal under either standard was appropriate.

C. DISTINCT METHODS OF PRE-TRIAL DISMISSAL
The defendants initially raised the M.R.C.P. Rule 12(b)(6) affirmative defense "failure to state a claim" in their answer to the complaint. Additionally, the defendants made a separate motion to dismiss the case at the conclusion of Bilbo's Spears hearing. Therefore, it is necessary to examine the considerations which should be undertaken by the trial court judge under both methods of pre-trial dismissal  dismissal under Rule 12(b)(6) and dismissal because of a frivolous complaint.
The differences between the two methods of dismissing cases has been recognized by other courts. Recently, the Fifth Circuit Court of Appeals stated that, "[t]his appeal brings to the fore the differences in the functions of § 1915(d) and Spears hearings on the one hand and Rule 12(b)(6) on the other." Id. That same court stated that, "[i]t is well settled that ruling under § 1915(d) is separate and distinct from that under Rule 12(b)(6)." Jackson v. City of Beaumont Police Department, 958 F.2d at 618.
The basis upon which a lower court judge grants dismissal is the primary distinction between the two methods of disposing of a case at the pre-trial level. If the trial court judge determines that a question of law is dispositive, dismissal would be appropriate under both methods of dismissal. "Therefore, [t]o the extent that a complaint filed in forma pauperis which fails to state a claim lacks even an arguable basis in law, Rule 12(b)(6) and § 1915(d) both counsel dismissal. But the considerable common ground between these standards does not mean that the one invariably encompasses the other." *685 Jackson v. City of Beaumont Police Department, 958 F.2d 616, 619 (5th Cir.1992) (quoting Neitzke v. Williams, 490 U.S. 319, 328, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989)).

1. Questions of Law
As a matter of law, Bilbo's Civil Rights Complaint did not state a claim upon which relief could be granted. The conduct of which Bilbo complained, being housed with Marks, was the responsibility of the Classification Committee, not the five (5) named defendants.
Further, Bilbo's complaint was not properly plead. Because it did not state acts or omissions by the named defendants which demonstrated conduct amounting to deliberate indifference, the complaint was not legally sufficient to state a cognizable Eighth Amendment claim against the defendants.
The proper standard of conduct of the defendants must be evaluated in order to analyze an Eighth Amendment claim of cruel and unusual punishment, lack of proper medical care, or improper prison conditions. Announcing that "deliberate indifference" describes the necessary conduct to make out such a claim, the Supreme Court of the United States, in the seminal case in this area of the law, stated that:
We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. George, supra, at 182-183, 96 S.Ct. 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.
Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).
The U.S. Supreme Court recently decided Farmer v. Brennan, 511 U.S. ___, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), an Eighth Amendment case concerning a claim against prison officials for failure to provide prison conditions which did not expose the prisoner to certain risks to health and safety. Farmer defines the term "deliberate indifference," and holds that a prison official is not culpable merely because obvious unsafe or unhealthy prison conditions exist.
Farmer states that the proper test for "deliberate indifference" is the "subjective recklessness" test, as that term is used in the criminal law context. As such, the subjective component does not allow liability based only upon obviousness or constructive notice.
The subjective intent of the individual prison official is relevant, and the objective "reasonable person" standard is not the benchmark. Therefore, the new standard interpreted by the Supreme Court poses a more stringent standard, requiring that a prison official possess a "sufficiently culpable state of mind" before imposition of liability upon those prison officials will be permitted. As the Supreme Court stated in Farmer:
We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." ... But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

... .
... In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under *686 the Eighth Amendment is to ensure "reasonable safety"... . Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

Farmer, 511 U.S. at ___, 114 S.Ct. at 1979 (emphasis added).
The Farmer case establishes the parameters of the circumstances under which prison officials may be liable under the Eighth Amendment. That case directly affects the case sub judice because it establishes the conduct of a prison official which exposes that prison official to Eighth Amendment liability. Farmer extends the factual requirements required to be plead by Bilbo in order to make out a valid Eighth Amendment claim. Accordingly, it is not sufficient that Bilbo merely alleged an obvious danger such as exposure to a fellow inmate with tuberculosis. Bilbo must allege acts or omissions demonstrating "subjective recklessness" by the defendants.
However, Bilbo could not point to a single causative act or omission on the part of the prison officials, much less one that would rise to the level of "subjective recklessness." Therefore, the circuit court judge properly dismissed Bilbo's complaint.

a. Responsibility of the Classification Committee
According to Bilbo's complaint, "[t]he thrust of Plaintiff's complaint is that he contracted tuberculosis because of exposure to inmate Marks." Basically, Bilbo alleged that he contracted tuberculosis because he was forced to be housed, or in close proximity, with Marks, who was ill with "active" (contagious) tuberculosis. He alleged that the defendants named in his complaint were responsible for causing him to be housed in close quarters with Marks.
However, the Classification Committee, created pursuant to Miss. Code Ann. § 47-5-99 (1972), was charged with the determination of the living quarters of prisoners. Authority and responsibility to make that determination was vested in the Classification Committee by statute, which states:
The committee shall be responsible for assigning a classification to each offender within forty (40) days after the offender's commitment to the custody of the department. Such classification shall determine the offender's work duties, living quarters, educational, vocational or other rehabilitation programs, and privileges to be accorded the offender while in custody of the department.
Miss. Code Ann. § 47-5-103 (1972) (emphasis added).
Hence the Classification Committee was charged with the responsibility of determining the living quarters of both Bilbo and Marks, not the five (5) defendants named in Bilbo's complaint. But, the Classification Committee was not named as a defendant by Bilbo.

b. A "Cognizable Claim" Requires Acts or Omissions
The Supreme Court has stated that causation is a necessary element of an Eighth Amendment claim:
Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.
Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (emphasis added).
Thus, Bilbo's complaint was required to allege acts or omissions of the defendants evidencing deliberate indifference. Bilbo failed to meet this threshold criterion to state a cognizable claim, rendering his complaint legally insufficient.

c. No Respondeat Superior  Personal Involvement
A defendant's liability under § 1983 may not be predicated upon imputation of *687 liability through respondeat superior. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). If the subordinates of Thigpen or Cabana violated the Eighth Amendment rights of Bilbo, their acts or omissions would not support an Eighth Amendment claim for damages against either Thigpen or Cabana, acting as their superiors or supervisors.
Supervisory officials may not be held liable solely on the basis of their employer-employee relationship. In a § 1983 action seeking damages, liability of prison officials will exist only if the defendant(s) were personally involved in the deprivation of the plaintiff's civil rights. Clark v. Michigan Dept. of Corrections, 555 F. Supp. 512 (E.D.Mich. 1982); Hodgin v. Roth, 536 F. Supp. 454 (E.D.Pa. 1982); Hendrix v. Faulkner, 525 F. Supp. 435 (N.D.Ind. 1981); O'Connor v. Keller, 510 F. Supp. 1359 (D.C.Md. 1981); Speed v. Adams, 502 F. Supp. 426 (E.D.Ark. 1980).
Commenting on the § 1983 liability of supervisors of police officers, we have previously stated:
What is the legal responsibility of Chief of Police Hargrove and Assistant Chief of Police Payne under § 1983? Respondeat superior liability does not flow for actions of an individual officer under § 1983. See, for example, City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). For the supervisor or superior to be liable, there must be come active participation by the supervisor in the "unconstitutional" conduct or actual knowledge and acquiescence thereof. See Samples v. City of Atlanta, 846 F.2d 1328 (11th Cir.1988).
Bankston v. Pass Road Tire Center, Inc., 611 So.2d 998, 1008 (Miss. 1992) (emphasis added).
Accordingly, Bilbo's complaint was required to demonstratively allege "personal involvement" on the part of each defendant. His complaint failed to demonstrate such personal involvement by the defendants. The mere fact that he intimates that "someone" with the Department of Corrections may, or should, be responsible for his condition, is not legally sufficient.

2. Rule 12(b)(6) Dismissal
In McFadden, no Spears hearing was held. Reviewing the trial court's Rule 12(b)(6) dismissal under those circumstances, this Court stated that, "[t]he standards which a trial court must employ when considering a motion to dismiss under Rule 12(b)(6) have become quite familiar. The well pleaded allegations of the complaint must be taken as true." McFadden v. State, 542 So.2d 871, 874 (Miss. 1989). However, Bilbo makes no allegation of personal involvement by any of the defendants. Instead, he merely states his injury and generally alleges that the defendants were responsible for protecting him from such injury.
Even under the liberal reading of a complaint, as required by the Rule 12(b)(6) standard, the trial court properly determined that dismissal of Bilbo's complaint was warranted. Such a conclusion by the judge in the lower court could have been reasoned by a determination that Bilbo's complaint was legally insufficient as a matter of law.
Analysis of a complaint for legal sufficiency, and survival of a Rule 12(b)(6) motion to dismiss, is a question of law which the court decides, taking the allegations of the complaint as true. As this Court has previously stated, "[a] motion for dismissal under Miss.R.Civ.P. 12(b)(6) raises an issue of law." Tucker v. Hinds County, 558 So.2d 869, 872 (Miss. 1990) (citing Lester Engineering Co. v. Richland Water and Sewer District, 504 So.2d 1185, 1187 (Miss. 1987); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357 at 593 (1969)).
Consequently, the lower court judge could have correctly found, as a matter of law, that Bilbo's complaint failed to state a claim upon which relief could be granted, because: (a) the Classification Committee was responsible for determining the living quarters of Bilbo and Marks, and the Committee was not named as a defendant; (b) the complaint did not allege causative acts or omissions on the part of the named defendants, therefore, it failed to state a cognizable *688 Eighth Amendment claim; or (c) the complaint did not state any basis of liability for the five defendants, not dependent upon the theory of respondeat superior to vicariously impute liability.

Appellate Review of a Rule 12(b)(6) Dismissal
"This Court conducts de novo review of questions of law." Tucker v. Hinds County, 558 So.2d 869, 872 (Miss. 1990).
We find that, applying the appropriate standards for stating an Eighth Amendment claim, and for the other reasons stated hereinabove, as a matter of law, Bilbo's complaint failed to state a claim upon which relief could be granted. The record before us does not reflect testimony or evidence regarding the merits of Bilbo's claim, therefore, we do not review such merits, if any, herein. Our review of a case in such a posture as the case sub judice is limited to de novo review of the procedures leading up to, and including, the Rule 12(b)(6) dismissal.
Consequently, the lower court's dismissal of Bilbo's complaint for failure to state a claim upon which relief could be granted was proper.

3. Dismissal Based Upon Frivolity
Once a Spears evidentiary hearing is conducted, dismissal of the case because of frivolity becomes an issue. This Court has had occasion to review such a dismissal in only two prior cases. Rougeau v. Shepard, 607 So.2d 1227 (Miss. 1992); Blanks v. State, 594 So.2d 25 (Miss. 1992).
In those cases, we stated that the lower courts erred in concluding that the factual allegations and legal conclusions of the respective plaintiffs' complaints were frivolous. Rougeau, 607 So.2d at 1231; Blanks, 594 So.2d at 28. In making that determination, we stated that if a complaint were found to be frivolous, "it would be subject to dismissal pursuant to Rule 11 M.R.C.P." Blanks, 594 So.2d at 28 (emphasis added).
However, if a prisoner proceeds pro se in forma pauperis, the prisoner has little to fear from Rule 11 sanctions. As stated by one court, "[t]he primary function of § 1915(d) is to deter the filing of baseless lawsuits by in forma pauperis litigants who `would [not otherwise] be deterred by either the actual cost of litigation or the imminence of Rule 11 sanctions.'" Jackson v. City of Beaumont Police Department, 958 F.2d 616, 619 (5th Cir.1992), (quoting Wilson v. Lynaugh, 878 F.2d 846 (5th Cir.1989)).
The Supreme Court recently explained the rationale for allowing dismissal of an in forma pauperis claim pursuant to the 28 U.S.C. § 1915(d) "frivolous" standard of dismissal, stating that:
At the same time that it sought to lower judicial access barriers to the indigent, however, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." [citations omitted]. In response to this concern, Congress included subsection (d) as part of the statute, which allows the courts to dismiss an in forma pauperis complaint "if satisfied that the action is frivolous or malicious."
Denton v. Hernandez, ___ U.S. ___, ___, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992) (emphasis added).
In Blanks, we stated the meaning of a "frivolous" complaint as, "a pleading scrutinized for Rule 11 MRCP purposes as one with `no hope of success.'" Blanks, 594 So.2d at 29 (citing Tricon Metals & Services, Inc., v. Topp, 537 So.2d 1331 (Miss. 1989)). But, that Rule 11 standard for ascertaining frivolity is different from the 28 U.S.C. § 1915(d) standard applied by the federal courts. Also, our previous interpretation of the term "frivolous" is discordant with the meaning previously ascribed to the word "frivolous" by the Supreme Court of the United States. The Supreme Court has defined a "frivolous" complaint, stating that, "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where is lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989) (emphasis added).
*689 In the case sub judice, Bilbo's complaint is frivolous for two reasons  it lacks an arguable basis in both "law" and "fact." It does not have an arguable basis in law because, as pointed out earlier, Bilbo's complaint did not allege acts or omissions by the named defendants which amounted to deliberate indifference. Therefore, the complaint failed to make out a "cognizable" Eighth Amendment claim.
Bilbo's complaint does not have an arguable basis in "fact" because he was given the opportunity to elaborate upon his allegations at the Spears hearing. However, after more than eighteen (18) months of conducting discovery, he could not produce or make reference to any evidence or testimony which was indicative of acts or omissions by the defendants which caused his alleged deprivation of rights.
The Supreme Court distinguished the considerations of a court contemplating a dismissal based upon the § 1915(d) "frivolous" standard, as opposed to a Rule 12(b)(6) dismissal, stating that:
[O]ur statement in Neitzke that § 1915(d) gives courts the authority to "pierce the veil of the complaint's factual allegations" means that a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations. We therefore reject the notion that a court must accept as "having an arguable basis in fact," id. at 325, 109 S.Ct., at 1831, all allegations that cannot be rebutted by judicially noticeable facts.
Denton v. Hernandez, 504 U.S. 24, ___, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992) (emphasis added).
Therefore, even the general conclusory allegations in Bilbo's complaint did not need to be taken as true by the lower court if it considered dismissal on the basis of frivolity  contrary to the considerations of dismissal under Rule 12(b)(6). Consequently, in determining if Eighth Amendment causative acts or omissions of the defendants were properly alleged, if the trial court judge properly pierced "the veil of the pleadings" at the evidentiary hearing, as it appears he did, and he was not bound to take the thrust of the bare allegations of the complaint as true, as permitted under Denton, then the trial court judge could have also found, as a matter of fact, that allegations supporting causation were lacking in Bilbo's complaint. As a consequence, Bilbo's complaint also lacked an arguable basis in "fact."
It must be remembered that the Spears hearing was initially conceived and implemented by the federal courts. We subsequently approved its use in Mississippi courts. In order to function properly, the federal courts' definition of the term "frivolous" should also be imported for use in evaluating a prisoner's pro se in forma pauperis complaint which has been subjected to a Spears evidentiary hearing. Without the federal "frivolous" definition as its counterpart, a Spears hearing has little effect, for it can rarely be said that a case has "no hope of success." The phrase "no hope of success" inherently requires the ability to affirmatively state that an event cannot occur under any likely set of circumstances. However, that is a heavy burden to meet, especially considering the fact that a collection of independently minded jurors are authorized to determine the outcome of the case.
Consequently, the definition of "frivolous" announced by the Supreme Court of the United States should be applied to pro se in forma pauperis prisoner cases in which a Spears hearing was held. The determination of frivolity should then be made by an examination of the allegations contained in the pleadings and the evidence presented at the Spears hearing. If the examined complaint lacks an arguable basis either in law or fact, it is properly characterized as "frivolous," and subject to pre-trial dismissal.

Appellate Review of Dismissal for Frivolity
Although we have specifically approved and confirmed that the use of Spears hearings (as originated in federal courts) is appropriate for Mississippi courts, this Court has not explicitly adopted the standard of appellate review applied by the federal courts to the appeal of a case dismissed because of frivolity, following a Spears hearing on the matter. Application of de novo *690 review to a dismissal resulting from a Spears evidentiary hearing would allow a prisoner proceeding pro se and in forma pauperis to have two (2) bites at the apple. If his case were defeated at the trial level and he subsequently appealed the case, he would effectively get a new trial, albeit "on the record." However, if the prisoner had filed his case in federal court and it was subsequently dismissed following a Spears hearing, the review of his case upon appeal would be limited by the abuse of discretion standard of appellate review.
The abuse of discretion standard of review is applied by federal courts to a prisoner's pro se in forma pauperis complaint dismissed as frivolous. In Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), the Supreme Court announced that the correct standard of review of a case dismissed as frivolous is the abuse of discretion standard, not review de novo, stating that:
Because the frivolousness determination is a discretionary one, we further hold that a § 1915(d) dismissal is properly reviewed for an abuse of that discretion, and that it was error for the Court of Appeals to review the dismissal of Hernandez's claims de novo. Cf. Boag v. MacDougall, 454 U.S. 364, 365, n., 102 S.Ct. 700, 701, n., 70 L.Ed.2d 551 (1982) (per curiam) (reversing dismissal of an in forma pauperis petition when dismissal was based on an erroneous legal conclusion and not exercise of the "broad discretion" granted by § 1915(d))... .
Denton, at ___, 112 S.Ct. at 1734 (emphasis added).
The Supreme Court indicated that the power of the lower court included the discretion to determine frivolousness, and that such a determination is not subject to a rigid standard. The Supreme Court stated that:
[T]he statute's instruction that an action may be dismissed if the court is "satisfied" that it is frivolous indicates that frivolousness is a decision entrusted to the discretion of the court entertaining the in forma pauperis petition. We therefore decline the invitation to reduce the "clearly baseless" inquiry to a monolithic standard.
Denton v. Hernandez, 504 U.S. ___, ___, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992) (emphasis added).
Today, keeping harmony with the United States Supreme Court cases, we state that we implicitly employ the abuse of discretion standard of appellate review for application to prisoner pro se in forma pauperis cases dismissed as frivolous, in furtherance of our prior decisions which approved utilization of Spears hearings in Mississippi courts as "consonant with our law."
Accordingly, after review of the record, including the pleadings and the transcript of the Spears hearing, we find that dismissal of the complaint on the basis of frivolity was not an abuse of discretion by the trial court judge.

IV.
Certain issues stated by Bilbo are merely conclusions or unsupported allegations. Other issues raised by Bilbo lack clarity, while some of the statements simply do not allege sufficient facts supported by the record to warrant reversible error.
As discussed supra, we apply the abuse of discretion appellate standard of review to a prisoner's pro se in forma pauperis complaint dismissed as frivolous, but we review a Rule 12(b)(6) dismissal de novo. Under the dual review employed in the case sub judice, we do not find that the trial judge erred in dismissing Bilbo's complaint.
The issues on appeal raised by Bilbo are quoted hereinbelow:
1. Lower Court error in giving Appellant a Spears v. McCotter hearing, when Appellant was placed on the witness stand and could not cross-examine defendants of the case.
As a matter of law, Spears hearings have been given approval by this Court and adopted for use by the lower courts of Mississippi. Rougeau v. Shepard, 607 So.2d 1227 (Miss. 1992); Blanks v. State, 594 So.2d 25 (Miss. 1992). Those hearings have not traditionally allowed such cross-examination of defendants.
*691 The Spears hearing was "in the nature of a motion for a more definite statement." It was conducted to ascertain whether additional information could be supplied by Bilbo which would clarify the allegations in his complaint. Cross-examination of defendants is an improper procedure for obtaining information with which to respond to a non-Spears motion for a more definite statement. Consequently, cross-examination of the defendants, for that purpose, would also have been improper in the case sub judice, where a Spears hearing was utilized.
2. Lower Court error in dismissing Appellant's complaint against Appellee Doctor Cox for not answering the complaint as ordered by the lower court and dismissing Appellant's default against Appellee Cox.
Defendant Cox was not served with process at the same time as any of the other defendants. Instead, Bilbo claims to have sent Cox, "the complaint, the summons and the default by certified mail."
Since Bilbo had not properly served Cox with the complaint, his entry of default was premature. According to M.R.C.P. Rule 4(d), the complaint and summons must be served upon a defendant. It is apparent from reading the text of M.R.C.P. Rule 4(a) and (b), that while the word "complaint" sometimes refers to a duplicate copy, the word "summons" means an original, not a duplicate or photocopy. M.R.C.P. Rule 4(a)(2), states in part that "[t]he person to whom the summons is delivered shall be responsible for prompt service of the summons and a copy of the complaint. Upon request of the plaintiff, separate or additional summons shall issue against any defendants." M.R.C.P. Rule 4(a)(2) (emphasis added).
Bilbo's affidavit attached to his application for entry of default against Cox and his "motion for Pre-Trial Conference," state only that a "copy" of the summons was sent to Cox. The originally issued summons had previously been left at an incorrect address for service upon Cox.
Applying the law to the facts, Bilbo never accomplished proper service of process upon defendant Cox.
3. Lower Court error in dismissing Appellant's Complaint when Appellant was in the housing unit with a person that has a communicable disease.
This issue basically states a res ipsa loquitur proposition. However, it is not enough to merely state that an alleged injury was incurred because of the act(s) or omission(s) of "someone." As discussed supra, in order to state a cognizable claim under the Eighth Amendment, the complaint must allege acts or omissions on the part of the particular defendant(s) amounting to deliberate indifference to the rights and welfare of the plaintiff. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).
At the Spears hearing, Bilbo failed to elaborate on his complaint. He could not point to the commission or omission of acts, on the part of any of the defendants, which proximately caused his claimed damages, much less conduct which could be construed as deliberately indifferent.
Further, as mentioned supra, the Classification Committee was responsible for determining the living quarters of Bilbo and Marks. Nevertheless, Bilbo did not name the Classification Committee, or any of its members, as defendants.
4. Appellees took no steps to prevent the outbreak of the active tuberculosis virus.
This assertion is contradictory to the statements made by Bilbo at the Spears hearing. At that hearing, Bilbo unequivocally stated that Marks had been placed in isolation and later sent to the University Medical Center.
Therefore, it can hardly be said that nothing was done to prevent an outbreak of tuberculosis.
5. It is the duty and responsibilities of the Appellees that the Appellant be protected from contracting disease from fellow inmates.
Allegations of duty are insufficient to maintain a claim under the Eighth Amendment. In order to be cognizable, allegations *692 of acts or omissions amounting to deliberate indifference proximately causing the injury must be made by the plaintiff.
As previously stated, res ipsa loquitur is not applicable. Although Bilbo insinuated that someone breached a duty owed to him because he allegedly contracted tuberculosis at the prison, he must allege more than mere generalities to state a legally sufficient claim under the Eighth Amendment. He must allege acts or omissions of the particular defendant which he claims proximately caused a deprivation of his Eighth Amendment rights.
Bilbo failed to meet this burden, therefore, his claim is not cognizable.
6. Appellees did not have a policy to check inmates for any communicable diseases.
Contradicting the aforementioned statement of issue, Bilbo stated in his complaint that he had been tested for tuberculosis while in prison. Also, Bilbo affirmatively stated that Marks had been "diagnosed" with tuberculosis, put in isolation, and transferred to the University Medical Center. A fortiori, tuberculosis was detected in Marks, the person from whom Bilbo claimed he contracted tuberculosis.
As a consequence, any policy, as it may have affected anyone else, is of no significance.
7. Appellees also knew that the Appellant was at a high risk to be infected with tuberculosis because of the ventilation system.
This statement amounts to no more than a conclusion. It does not allege that the ventilation system was the source of spreading tuberculosis. Neither does the statement allege what affirmative acts or omissions by the defendants were related to the ventilation system. Contrary to this statement by Bilbo, his complaint alleges, in substance, that he contracted tuberculosis from being housed with, and in close physical proximity, to Marks.

V.
Although it had its genesis in the federal courts, pursuant to Blanks and Rougeau, the lower court's utilization of the Spears evidentiary hearing was proper. The subsequent dismissal of Bilbo's pro se in forma pauperis complaint was proper under the Rule 12(b)(6) standard and the "frivolous" standard because a question of law was dispositive under both standards  the legal sufficiency of the complaint.
If a trial court judge in Mississippi is allowed to conduct a Spears hearing in order to clarify or ascertain allegations of a litigant's in forma pauperis complaint, it makes little logic to force that judge to ignore baseless or meritless claims when considering a motion to dismiss. In other words, application of the "Rule 11 M.R.C.P.  no hope of success" standard of consideration of "frivolity" emasculates the Spears hearing, nullifying the trial court judge's determination that the complaint has no "basis in fact." The trial-level impact of the Spears hearing would be "limited" to a finding by the trial court judge that the litigant's in forma pauperis complaint does have merit, and the case should proceed. That would relegate a Spears hearing to a one-way street, rendering it useless, since the case would normally proceed in the absence of such a hearing.
"The opportunity to complain promotes the American policy of keeping the court house [sic] open for litigants, while the broad discretion in the trial judge guards against abuse of the access." Washington v. Tinsley, 809 F. Supp. 504, 506 (S.D.Texas 1992), (citing Wilson v. Lynaugh, 878 F.2d 846, 849 (5th Cir.1989)) (emphasis added). We should also consider the past wisdom of the Spears court which is noticeably applicable to the present. There, that court stated:
Almost a decade ago Judge Bell of this court addressed the "difficult task facing the courts of winnow[ing] out the wheat from the unusual amount of chaff necessarily presented in a system which fosters pro se litigation." Watson v. Ault, 525 F.2d at 890. In the intervening years the task has become more unmanageable, our winnowing fans are seemingly impotent when applied to the mountains of chaff before us... . [C]ourts should use with greater frequency the device of referring prisoners' cases to magistrates... . [L]imited *693 judicial resources might then be utilized more timely and more efficaciously to resolve those cases in which relief should be granted.
Spears v. McCotter, 766 F.2d 179, 182 (5th Cir.1985) (emphasis added).
While a Spears hearing is not explicitly authorized by our state statutes, it is a federal procedure consonant with our law, given approval in Blanks and Rougeau, supra. We also find the complementary standard of review applied to Spears hearings by the federal courts to be very persuasive. Therefore, we choose to give meaning and effect to Spears hearings, announcing our employment of the United States Supreme Court's definition of "frivolous" and the abuse of discretion appellate standard of review for application to pro se prisoners' in forma pauperis complaints.
Accordingly, we affirm the lower court's dismissal of the Plaintiff's complaint, finding that the lower court judge did not commit reversible error.
AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
McRAE, J., concurs in results only.
BANKS, J., concurs with separate written opinion joined by PRATHER, P.J., and SULLIVAN, J.
BANKS, Justice, concurring:
I agree with the result reached by the majority, but I cannot agree with its perversion of our standard for gauging frivolousness in an effort to force uniformity with a federal proceeding based on a federal statute which we do not have. See, 28 U.S.C. Sec. 1915(d). In Blanks v. State, 594 So.2d 25 (Miss. 1992), we approved a Spears[1] type hearing, but we did not, as we could not, apply federal law to the state question of the viability of in forma pauperis proceedings in our state courts. Our statute provides that a pauper may bring an action and no more. We held in Blanks that the Spears hearing could be utilized to determine indigent status.
As for the question whether the complaint is frivolous, we observed that the scope of inquiry is defined by our rules of civil procedure and no where else. There we find Rule 11 provide for the dismissal of frivolous complaints. If, then, a complaint is brought in forma pauperis and it is determined, based on the Spears hearing that it is frivolous, it can be dismissed. We have said on numerous occasions that "frivolous" as used in Rule 11 means "without hope of success." Greenville Public School District v. Western Line Consolidated School District, 575 So.2d 956 (Miss. 1990); Nationwide Mutual Ins. Co. v. Evans, 553 So.2d 1117 (Miss. 1989); and Tricon Metals & Services, Inc. v. Topp, 537 So.2d 1331 (Miss. 1989). Because we are applying our Rule 11, not the federal statute, we have no occasion here to abandon that formulation.
PRATHER, P.J., and SULLIVAN, J., join this opinion.
NOTES
[1] Spears v. O.L. McCotter, Director, Texas Department of Corrections, et al., 766 F.2d 179 (5th Cir.1985), discussed infra.
[2] Although the parties did not address this issue on appeal, this Court has held that court costs are required to be prepaid on the appellate level. Moreno v. State, 637 So.2d 200, 201-02 (Miss. 1994). Since the parties did not raise this issue, this Court will not address court costs.
[1] Spears v. O.L. McCotter, Director, Texas Department of Corrections, 766 F.2d 179 (5th Cir.1985).