537 So.2d 1331 (1989)
TRICON METALS & SERVICES, INC.
v.
Jim TOPP.
No. 57367.
Supreme Court of Mississippi.
January 4, 1989.
*1332 Joel W. Howell, III, Jackson, for appellant.
Joe Clay Hamilton, Meridian, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
In this its second appearance before the Court, this breach of employment contract case presents a contrast between the conventional and the new. First, we provide a relatively straight-forward review of credibility choices made by the trier of fact. Second, we tackle points of some novelty regarding enforcement of Rule 11, Miss.R. Civ.P.
On the appeal of the findings of fact which relate to the merits of this case, we find the Chancery Court's actions supported by substantial evidence and well within its authority and, accordingly, we *1333 affirm. On the Rule 11 matter, we find the sanctions imposed consistent with the language of the rule and its deterrent purpose and affirm as well.

II.
This case began when Tricon Metals & Services, Inc. sued its former marketing manager, Jim Topp, alleging that Topp had committed various breaches of his contract of employment. Topp counterclaimed for commissions said to have been earned but not paid. In Tricon Metals & Services, Inc. v. Topp, 516 So.2d 236 (Miss. 1987) ("Tricon I"), we described the course of proceedings below and something of the history of this matter, points which need not be repeated here. In the end, we found the form of the decision below insufficient to enable us to perform our function of appellate review, and we remanded for findings of fact and conclusions of law under Rule 52(a), Miss.R.Civ.P.
In response to our opinion in Tricon I, the Chancery Court has now entered and filed the necessary findings of fact and conclusions of law. Generally speaking, these findings reflect a credibility choice made in the context of hotly disputed and widely differing versions of the facts, with little documentary evidence to aid in resolution. We recognize that the Court below could not escape the conclusion that one or more witnesses' memory was quite faulty. We say this in the context of our summary of our scope of review from Tricon I.
Ordinarily this Court will not reverse findings of fact made by a trial court sitting without a jury where those facts are supported by substantial credible evidence in the record. [citations omitted] This is as true of ultimate facts as of evidentiary facts. [citations omitted]
Put another way, this Court ought and generally will affirm a trial court sitting without a jury on a question of fact unless, based upon substantial evidence, the court be manifestly wrong. [citations omitted]
Tricon I, 516 So.2d at 238.
This case breaks down into three separate claims by the parties which we will discuss shortly, but prior thereto one fundamental point of contention should be mentioned. There is no question but that in July of 1982, Jim Topp entered into a contractual relation for employment with Tricon Metals and Services, Inc. What is very much in contention is whether that contractual relationship was memorialized by a written contract or whether it was an oral contract for employment supported by certain written notes and memoranda. Tricon sought to establish that it and Topp had executed a written employment contract on a form which Tricon says it uses for all of its employees. Significantly, the form contract contains a non-competition clause. Topp denied that he signed any such contract and there was offered at trial various items of circumstantial evidence corroborating Topp's view. The Court below found as a fact that Topp never signed any written contract with Tricon. Based upon the principles found in the cases cited above regarding our scope of review, this finding of fact is beyond our authority to disturb.
Turning to the specific claims, we first find Tricon claiming reimbursement for some $7,463.67 from a promissory note made by Topp, guaranteed by Tricon, upon which Topp defaulted and Tricon was forced to pay. The evidence reflected that on February 15, 1983, the First Commercial Bank of Birmingham, Alabama, extended a loan to Topp. In exchange Topp gave the bank his promissory note, and Tricon guaranteed it. Topp did in fact default, and on June 10, 1985, the note was paid by Tricon.
The Court found that the loan had originally been arranged by James Bell, Tricon president. Tricon treated the whole transaction as an advance against commissions which Topp in fact subsequently earned. Accordingly, Topp owes Tricon no reimbursement for Tricon's having picked up the note at the bank in Birmingham.
Second, Tricon sought to prove that Topp owed it an additional $15,000.00, this time for direct advances  $12,000.00 in commission advances plus "incidental and consequential damages." Topp did not dispute *1334 that certain advances were made but argued that he subsequently earned and was entitled to these commissions, in consequence of which Tricon's claim must fail. Indeed, Topp urged that Tricon owed him substantial additional sums for commissions earned but not paid which more than offset any "advances" Tricon had made to Topp. Here again, the Chancery Court resolved the factual dispute in Topp's favor. As Topp's testimony furnishes a legally sufficient basis for such fact finding in the court below, we decline to disturb that which has been done.
Third, there is the matter of Topp's counterclaim. Topp calculated that Tricon owed him some $96,755.00. He sought to prove that he was entitled to an overriding commission for the year 1984 in the sum of $59,360.00. He also claimed corrected commissions from July 1982 to May 1984 in the sum of $13,111.00, plus the sum of $6,278.00 on "house accounts", and unpaid 1984 commissions in the amount of $10,731.00. Subtracting from the aggregate of figures the commission advances Tricon had made to him and, as well, his obligation on the note at the Birmingham Bank, Topp demanded judgment on his counterclaim in the amount of $84,005.00 plus interest.
Implicit in the findings made on Tricon's claims against Topp, was a finding in Topp's favor on the liability phase of Topp's counterclaim. The Court seemed to recognize this but found great difficulty with Topp's damages proof.
The wide variance in the testimony regarding the agreement on payment of commissions, as well as that dealing with calculations by both parties, made it impossible for the Court to accurately compute any amount due Topp.
The Chancery Court, therefore, found that Topp had failed to prove that Tricon owed him "further commission on sales" and, accordingly, "awarded no damages for payment of commissions."
Elsewhere, the Court opined
that Topp had received all his commissions and income due him and refused to order any further commissions or damages.
The net effect of the decision below is that the Chancery Court has held Tricon's claim and Topp's counterclaim a wash. Common sense makes clear that this could not in fact be so. Our review of the record, however, leaves us with the same impression as that gleaned by the Court below: that the evidence regarding the quantum of any sums Tricon may owe Topp is quite problematical and inclusive. The net effect of the holding below was that Topp had failed to meet the burden of proof on the issue of his damages. We hold such an implied finding within the Court's authority and affirm.

III.

A.
Our final questions concern the Chancery Court's assessment of $3500.00 in attorneys fees against Tricon. The Court acted on the authority of Rule 11, Miss.R.Civ.P. The Court observed that Topp had to defend the original complaint for injunction which was "was an action filed on a contract which was non-existent." The Court then said that it "believes that this action was frivolous."
There can be no doubt of the authority of our trial courts to assess reasonable attorneys fees when in the opinion of the court a motion or pleading is "frivolous". Rule 11(b), Miss.R.Civ.P., provides, in relevant part:
If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees.
Topp invoked the Court's authority to sanction when in paragraph 7 of his counterclaim he alleged that Tricon's action "was malicious and groundless and wholly without merit and was a wilful effort on the part of the counterdefendant [Tricon] to harass and annoy the counterclaimant [Topp]." Topp demands punitive damages *1335 but makes no express demand for attorneys fees.
Topp's pleading makes no specific reference to Rule 11. We regard the fact beside the point, as the wording just quoted is wholly consonant with the language of Rule 11(b). If there be doubt, we regard it implicit in Rule 11's language that the Court may act on its own initiative. See, e.g., "If a pleading or motion ... is signed with intent to defeat ..., it may be stricken ..." "For wilful violation ... an attorney may be subjected to... ." "If a party files a motion or pleading which... is frivolous ..., the court may order... ." In each instance the rule's language identifies a triggering event as requisite to the authority to sanction. In each instance that triggering event is litigation conduct by a party and/or his attorney. At no point does the rule read "and upon motion of a party aggrieved" or language to that effect. Our trial courts have authority to act sua sponte under Rule 11 and ought exercise that authority against the backdrop of their inherent authority to impose sanctions upon those who abuse the judicial process. See Allison v. State, 436 So.2d 792, 796 (Miss. 1983); Scott v. State, 310 So.2d 703, 706 (Miss. 1975).
In this light, we hold that the Chancery Court had authority to make the assessment of attorneys fees here at issue. Topp's counterclaim afforded Tricon reasonable advance notice that Topp was seeking punitive sanctions on grounds Tricon's lawsuit was frivolous and was filed for purposes of harassment.

B.
More substantively, a pleading or motion is frivolous within the meaning of Rule 11 only when, objectively speaking, the pleader or movant has no hope of success. Frivolous filings impose substantial and unnecessary costs upon both litigants and the courts, and ultimately upon the public. Rule 11 must be read and interpreted in light of the purpose implicit in it: one of general deterrence of frivolous filings.[1] Common sense informs us that we may not eliminate the frivolous filing nor its costs. The goal of Rule 11 enforcement is to holding the social cost of frivolous filings to an optimally efficient level.
These points made, we turn to the merits, and when we do so, we must divide Tricon's suit into two parts. First, Tricon sought injunctive relief based upon the non-competition clause of the alleged contract. Topp was put to the trouble and expense of a hearing on Tricon's demand for preliminary injunction. Second is Tricon's suit for monetary relief, its claim for repayment on the note it picked up at the Birmingham Bank and for repayment of commission advances not earned. We will consider the two points separately.
The claim for injunctive relief turns upon whether a noncompetition clause was a part of Topp's contractual undertaking to Tricon. In the present context, our question is whether Tricon, giving it the benefit of reasonably competent legal advice, had any hope of success on its claim that there was such a non-competition clause. Our inquiry is an objective one to be exercised from the vantage point of a reasonable party in Tricon's position as it filed and pursued its claim.
The Court below held that, as a matter of fact, there was no written contract and hence no non-competition clause. We must be clear that mere denial of a claim on the merits in and of itself does not subject a party to Rule 11 sanctions. The claim must not only be without merit, it must be frivolous. See Dethlefs v. Beau Maison Development Corp., 511 So.2d 112, 118 (Miss. 1987).
The record before us contains no signed, written contract containing a non-competition clause. All agree that the only possible source of any such non-competition clause would be the form written contract. The record does contain several vignettes which suggest that a written contract was *1336 never signed. For example, during cross-examination of Tricon President James Bell, the defense entered a memo with a note from a Mrs. Woods to Walter Ferguson, Tricon's Vice President and Secretary-Treasurer. It reads, in part:
4-6-84
Mr. Ferguson,
Mr. Bell suggests that I send this after he signs contract.
The note is appended to a request from Topp to Mrs. Woods to send Topp certain items (knives, summer caps, etc.) used to advertise the company to buyers. The implication supports Topp's contention that he never signed a contract. Topp stated in a deposition that every time he brought up the subject of his commissions and overrides he was told by Bell, "When you sign a contract, we will talk about it."
Tricon's evidence in defense consisted of the testimony of Ferguson that Topp signed the form contract, coupled with the innuendo that Topp must have removed it from the files incident to this leaving employment with Tricon. Ferguson's testimony was hearsay and the Chancery Court in its opinion observed
Tricon produced no witnesses to testify that they saw defendant [Topp] sign such a contract, nor was there any testimony that anyone ever saw such a signed contract.
In this context, we find within the Chancery Court's discretionary authority the implicit Rule 11 conclusion that Tricon had no hope of success on its claim for injunctive relief. In saying this, we wish to emphasize that we consider the question a close one. Not every party who relies on verbal hearsay testimony or even on a position that he will put the plaintiff to his proof is, upon failure, subject to Rule 11 sanctions. While courts are and ought be slow to brand witnesses as liars, the Chancery Court in its opinion recognized that on certain issues the testimony in this case placed "squarely" before the Court "the truthfulness of all the witnesses' testimony." On this particular issue, the implicit conclusion of the Chancery Court is that Ferguson was not being truthful and such conduct is certainly imputed to Tricon.[2]
The second part of Tricon's suit is the claim for repayment of the bank note and advances on commissions. Superficially, this presents a problem for the Rule 11 sanction in the sense that, at least with respect to the bank note, Tricon presented a prima facie case of entitlement to recovery. Our question is whether in such a context Rule 11 sanctions may be imposed where the defendant has a complete defense to the plaintiff's claim. The answer must surely be "Yes". If a defendant has a complete defense, then it follows that a plaintiff has no hope of success. It is the same as if plaintiff filed and pursued a claim that was clearly barred by the statute of limitations.
The Court below found that Topp had a complete defense in that he had earned all of the commissions that had been advanced to him, including that in the form of the bank loan. Emphasizing again that rejection of a claim on its merits does not automatically subject a party to Rule 11 sanctions, we nevertheless note that the Court in effect held that Tricon well knew of Topp's defense and that it presented testimony the truthfulness of which was in great doubt.[3]
Our trial courts have a certain amount of discretion not only in determining whether sanctions should be assessed but also with regard to the quantum of sanctions. This *1337 discretion generally ought be exercised in the context of the facts of the particular case, the language of Rule 11 and its dominant purpose of general deterrence. Our review of the record reflects a hearing on the motion for preliminary injunction and as well a trial on the merits. We can employ our common sense regarding the time, trouble and effort involved in defending such proceedings, including most certainly reasonable and necessary out-of-court pretrial and trial preparation efforts. The Chancery Court's assessment of attorneys fees in the amount of $3,500.00 was within its authority in the premises, the evidence in the case is consistent with Rule 11 and its purposes.[4] The assessment is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
NOTES
[1] The deterrent purpose of Rule 11 was recognized in Canton Farm Equipment, Inc. v. Richardson, 501 So.2d 1098, 1108 (Miss. 1987).
[2] The Chancery Court failed to make detailed findings of fact and conclusions of law on the Rule 11 issue. The Court did give us enough of its view so that the general thinking of the trial court is quite apparent. On this issue the matter becomes one within language we employed in Tricon I where we said that on such occasions

We are required by our prior decisions and by sound institutional considerations to proceed on the assumption that the chancellor resolved all such fact issues in favor of the appellee. [citations omitted] Further, when there are no specific findings of fact, we sometimes assume the trial judge made determinations of fact sufficient to support the judgment. [citations omitted]
Tricon I, 516 So.2d at 238.
[3] See note 2, supra.
[4] By way of contrast, we reversed a Rule 11 sanction in Dethlefs v. Beau Maison Development Corp., 511 So.2d 112, 118 (Miss. 1987) where there was no "injury caused or resulting from these unfounded charges."