# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-00735-SCT

*IN RE: KAREN H. SPENCER*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 04/18/2006 |
| TRIAL JUDGE: | HON. SARAH P. SPRINGER |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JULIE ANN EPPS |
| ATTORNEY FOR APPELLEE: | J. STEWART PARRISH |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART; AND VACATED AND REMANDED IN PART - 06/19/2008 |
| MOTION FOR REHEARING FILED: | 04/18/2008 |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is denied. The original opinion is withdrawn and this opinion substituted therefor.

¶2.     A grandmother and a mother retained attorney Karen Spencer to represent them in a child-custody matter before the Chancery Court of Clarke County, Mississippi.[1] During the

---

[1]The parallel matter is ***D.C. v. D.C.***, 2006-CA-00320-SCT (Miss. 2008). Due to the sensitive information discussed below and in the parallel matter, the proper names of the parties have been removed. M.R.A.P. 48A.

course of this representation, the chancellor, on motion by the guardian ad litem and counsel for the father, found Spencer to be in contempt of court. The chancellor ordered Spencer to pay fines and to be incarcerated as sentence for the contempt. The chancellor, also on motion by the father and the guardian ad litem, imposed monetary sanctions against Spencer under the Litigation Accountability Act of 1988 and Rule 11 of the Mississippi Rules of Civil Procedure. On reconsideration, the chancellor rescinded the portions of her contempt order which sentenced Spencer to incarceration. Spencer now appeals. M.R.A.P. 4.

## FACTS

¶3. The grandmother retained Spencer to represent her in her attempt to intervene and assert a claim for grandparents' visitation in Cause No. 00-0038(S), a child-custody-modification matter filed in the Chancery Court of Clarke County, Mississippi. The custody modification originated with the father's petition for modification of the visitation agreement entered upon his divorce from the mother. He sought full summer visitation with his children: a daughter born in 1995, and a son born in 1997. The grandmother's motion to intervene, faxed to the chancery clerk on Friday, August 19, 2005, included a request for clarification of the Order Sua Sponte (or "sua sponte order" herein) entered two days earlier by the chancery court. The sua sponte order temporarily placed physical custody of the children with the Mississippi Department of Human Services ("DHS"); required the mother to bring the children to the office of the guardian ad litem by 3:00 p.m. the upcoming Friday to be placed with the DHS; and ordered supervised visitation for both the mother and the father. The order authorized the guardian to instigate abuse proceedings in youth court.

2

¶4. At the time, Joe Kieronski was counsel of record for the mother. He signed the sua sponte order under the heading "approved as to form." The mother did not present the children to the guardian ad litem that Friday as ordered, based upon the advice of Spencer that the motion to clarify suspended the enforcement of the sua sponte order.

¶5. Spencer faxed a "Motion for Emergency/Expedited Hearing on Motion to Intervene and/or for Modification and/or for Reconsideration or Clarification of Order Sua Sponte" to the chancery clerk and counsel of record on behalf of both the grandmother and the mother. She also faxed a notice of hearing to the clerk and counsel, noticing the hearing on the motions for 9:00 a.m. the following Monday.[2] The exhibits to the motion included the medical records and counseling records of the minor daughter. Spencer also filed an affidavit made by the mother which alleged the father sexually abused their daughter. The records and affidavit were not submitted under seal or otherwise marked "confidential."

¶6. On Monday, the chancellor entered an order allowing Kieronski to withdraw as counsel for the mother and substituted Spencer as counsel. The chancellor denied the grandmother's motion to intervene and for clarification. The children were turned over to DHS, which placed them with their paternal grandparents. A shelter hearing was set for Wednesday in the parallel youth-court matter. Trial of the custody issues was rescheduled for September 20.

---

[2]Spencer engaged in a pattern of first faxing a copy of pleadings to the chancery clerk's office and to counsel of record, and subsequently mailing an original to the clerk and copies to counsel. This practice resulted in a large record, containing duplicate copies of several lengthy pleadings.

¶7.     Prior to the trial date, Spencer caused subpoenas for computer records to issue to a hospice and a church. The father was, at the time, working as a chaplain for the hospice and previously had worked for the church. The subpoenas requested that the hospice and the church produce documents concerning communications between them or the father and Edward N. Kramer, III, Evelyn N. Kramer and/or Nick Smith.[3] The hospice filed a motion to quash its subpoena, and the father sought to have the subpoena for the church quashed.

¶8.     In the time between the issuance of the subpoenas and the scheduled trial date, Spencer faxed to and filed a Status Report and Motion for Change with Custody to the clerk and counsel. She attached to this motion the daughter's medical records. The next day, she filed a response to the father's Motion to Quash, again attaching to the motions the daughter's medical records.

¶9.     On the scheduled trial date, Tuesday, September 20, the guardian ad litem announced he was not prepared to proceed. He had not obtained reports from medical experts concerning the veracity of the abuse and manipulation allegations pertaining to the minor daughter, nor had he had time to include the reports in his opinion. On the same date, the chancellor heard and denied the mother's Motion for Change of Custody, scheduled a status conference for October 6, and instructed the chancery clerk to seal the court's file in the custody matter. The chancellor imposed a gag order on the parties and their attorneys and agents, with the exception of the guardian ad litem. The guardian could discuss matters with the experts upon which he would rely to make his report. The chancery court quashed the

---

[3]The guardian ad litem, his ex-wife, and an unrelated person, respectively.

4

subpoena to the church. Finally, the chancellor ordered Spencer to submit future subpoenas to the court for approval before the subpoenas were issued.

¶10.    One week after the scheduled trial date, Spencer filed a "(Second) Motion to Return Custody to Mother." Attached to this motion were many of the same medical records previously filed with other motions. (This motion alone comprised more than two volumes of this Court's record on appeal.) Three days after that, she faxed and filed a "Motion for Emergency/Expedited Hearing on Motion to Return Custody to Mother" and a notice of hearing, setting the matter to be heard on October 10, the rescheduled conference date. Counsel for the father filed an objection to the hearing, citing prior engagements in Kemper County and the fact that Spencer unilaterally had set the matter for hearing without contacting him.

¶11.    On October 10, Spencer filed an "Amended (Second) Motion to Return Custody to Mother," including all the attached medical records that accompanied the first version. Spencer later would state that the exhibits to the first version were incorrectly identified, which made it necessary to re-file the motion. One week later, Spencer filed a "Motion to Require Guardian ad litem to File Report Returning Custody to [the mother]." The next day, Spencer faxed and filed a "Motion for Order Scheduling the Trial of All Pending Issues." She faxed and filed a notice of hearing on all pending motions to be heard for November 7, the next time the chancellor scheduled a status conference.

¶12.    At the hearing on November 7, the guardian ad litem indicated to the chancellor that he was awaiting the completion of a few more counseling sessions with a psychologist and that he intended to interview four or five more people before completing his report. The

5

chancellor found Spencer's motions reached the ultimate issue of custody and denied them as premature. The guardian ad litem was instructed to file his report no later than December 5. No hearing was set for this date.

¶13.   On December 5, counsel for the father was not present in Clarke County when the court went back on record in this matter. The guardian ad litem filed his first interim report as ordered, which recommended the children remain in the legal custody of DHS. However, the mother was given temporary physical custody of the children. At some point within the following three days, the mother left Mississippi with the children and did not return.

¶14.   Consistent with the chancellor's previous order regarding subpoenas, on December 5, Spencer sought permission from the chancellor to issue "trial" or "witness" subpoenas for trial the following February. The chancellor granted permission, and Spencer had the chancery clerk issue ten subpoenas that day.

¶15.   One week later, Spencer filed a notice of hearing to bring her pending motions to be heard on January 9, 2006. Spencer failed to attend this hearing. According to Spencer, she had realized she had a scheduling conflict that day, but had failed to file a re-notice of hearing. She stated she had attempted to participate by telephone, but counsel were not willing to discuss the motions by telephone, and the court did not permit her participation in this manner. Spencer was ordered to pay the cost of transcription of the hearing. At the contempt hearing, Spencer apologized and accepted responsibility for the mistake. The record indicates that, by this time, the father was aware that the mother had left Mississippi with the children.

¶16.    On January 17, Spencer filed her first motion to withdraw as counsel.  She stated she had been unable to speak with the mother since December 12 the preceding year.  The father subsequently moved the chancellor to find the mother and Spencer in contempt for a civil conspiracy to deprive him of visitation and custody.  The guardian ad litem filed a motion for contempt, seeking attorneys' fees.  As grounds for sanctions, the guardian ad litem alleged the actions of the mother and Spencer in filing numerous motions were responsible for the majority of his fees; and that the grandmother had filed a Bar complaint against him using his reports, which could only be obtained through Spencer.  He also cited the mother's actions in leaving Mississippi with the children.

¶17.    The contempt hearing began Friday, February 3, and ended the following Thursday. The chancellor took the motions for contempt under advisement.  The trial on the merits of the custody petition began and concluded the next day.  The father, through counsel, filed a separate motion to find Spencer in contempt after trial for disseminating information about the case that had appeared on various internet websites.  Spencer filed her second motion to withdraw on March 7, 2006.

¶18.    The chancellor entered her seventy-six-page Memorandum Opinion and Judgment on April 18, 2006.  The contempt order imposed the following sanctions and sentences.  For failing to appear at the January 9 hearing, Spencer was held in contempt and ordered to pay $100 or to be incarcerated for twenty-four hours.  For violations of the gag order and youth court confidentiality statute, Spencer was held in contempt and sentenced to pay a $500 fine and be incarcerated for ninety days.  This sentence was imposed twice, for violations occurring before and after the trial of the custody matters.  For causing a subpoena to issue

7

to the Quitman School District in violation of the subpoena order, Spencer was held in contempt and ordered to pay $100. For causing four subpoenas to be issued and directed to four employees of DHS in violation of the subpoena order, Spencer was sentenced to pay $500 and to be incarcerated for ninety days for each subpoena, with incarceration sentences to run concurrently. For filing frivolous pleadings and otherwise harassing the guardian ad litem and counsel for the father, Spencer was ordered to pay $25,000 in attorneys' fees and expenses to each attorney, with interest to accrue at five percent. On reconsideration, the chancellor rescinded the portions of this judgment which sentenced Spencer to incarceration.

## STANDARDS OF REVIEW

¶19. The decision to award monetary sanctions under the Litigation Accountability Act is left to the discretion of the trial court. Miss. Code Ann. § 11-55-7 (Rev. 2002). The same is true for sanctions awarded under Rule 11 of the Mississippi Rules of Civil Procedure. Miss. R. Civ. P. 11(b). This Court reviews the judgment of the sanctioning trial court for abuse of discretion. *Wyssbrod v. Wittjen*, 798 So. 2d 352, 357 (Miss. 2001). "In the absence of a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors, the judgment of the court's imposition of sanctions will be affirmed." *Id.* (citations and quotations omitted).

¶20. The decision to hold a person or entity in criminal or civil contempt also is a discretionary function of the trial court. *Wyssbrod*, 798 So. 2d at 359. This Court reviews the trial court's judgment of criminal contempt *ab initio*. *In re Smith*, 926 So. 2d 878, 885-86 (Miss. 2006). *See also Dennis v. Dennis*, 824 So. 2d 604, 608 (Miss. 2002).

## DISCUSSION

8

**I. WHETHER THE CHANCELLOR ERRED IN GRANTING A JUDGMENT AGAINST SPENCER IN FAVOR OF COUNSEL FOR THE FATHER AND THE GUARDIAN AD LITEM PURSUANT TO THE LITIGATION ACCOUNTABILITY ACT AND/OR RULE 11.**

¶21. Spencer's first assignment of error is that the chancellor erred when imposing sanctions against her under the Litigation Accountability Act and Rule 11 of the Mississippi Rules of Civil Procedure. The father and the guardian ad litem generally respond that the sanctions are appropriate because Spencer filed several frivolous pleadings and communicated with them in a harassing manner.

¶22. The Litigation Accountability Act authorizes a court to impose monetary sanctions "in any civil action commenced or appealed in any court of record in this state." Miss. Code Ann. § 11-55-5(1) (Rev. 2002). According to the Act:

> [T]he court shall award, . . . in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court . . . finds that an attorney or party . . . asserted any claim or defense, that is without substantial justification, or . . . was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.

*Id.* A trial court must examine certain factors before awarding sanctions under the act. Miss. Code Ann. 11-55-7 (Rev. 2002); ***Miss. Dep't of Human Servs. v. Shelby***, 802 So. 2d 89 (Miss. 2001).

¶23. Rule 11 of the Mississippi Rules of Civil Procedure permits a court to impose sanctions against a party or his attorney. Miss. R. Civ. P. 11. "If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party, or his attorney, or both, to pay the

opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorney's fees." *Id.*

¶24.    The chancellor entered a judgment which ordered Spencer to pay $25,000 to the guardian ad litem as "penalty pursuant to the Litigation Accountability Act and sanction pursuant to Rule 11, MRCP." The chancellor entered an identical judgment to be paid to counsel for the father. The testimony at the hearing on the motions for sanctions indicated that the guardian ad litem incurred $11,249 in fees and expenses up to February 3, 2006. His invoices were entered as exhibits, reflecting an outstanding balance of $12,449.18 in fees and expenses as of February 8, 2006. The testimony also reflected that counsel for the father incurred $11,861.36 in fees and expenses up to January 31, 2006. Counsel testified he charged $150 per hour and anticipated billing his client for fifty-seven additional hours from that date until the end of trial.[4]

¶25.    After reviewing the record, we find the chancellor committed plain error and therefore abused her discretion by awarding a judgment of fees and expenses greater than that supported by the record. There is nothing in the Litigation Accountability Act or Rule 11 which supports awarding attorneys' fees and expenses in excess of those actually incurred. Both the Act and the Rule allow only for the recovery of "reasonable" fees and costs. We previously have identified the factors to be considered when determining the reasonableness of attorneys' fees. *See McKee v. McKee*, 418 So. 2d 764 (Miss. 1984); Miss. Rule of Prof'l Conduct 1.5(a). The punitive functions of both the Act and the Rule are served by simply

---

[4]This product comes to $8,550, yielding a total sum of $20,411.36 in fees and expenses.

awarding reasonable attorneys' fees and costs, not an amount in excess of them.

Additionally, the chancellor erred in awarding fees and expenses to the father's attorney, since Rule 11 explicitly instructs that the trial court order the sanctioned party "to pay to the *opposing party or parties* the reasonable expenses incurred."[5] Since Spencer challenges the merits of the grounds for sanctioning her, we will now examine them.

A.      *Litigation Accountability Act*

¶26.    As noted above, the Litigation Accountability Act permits a court to impose sanctions on an attorney who "asserted any claim or defense, that is without substantial justification, or . . . was interposed for delay or harassment" or if the attorney "unnecessarily expanded the proceedings by other improper conduct." Miss. Code Ann. § 11-55-5 (Rev. 2002). "Without substantial justification" is defined as any claim  that is "frivolous, groundless in fact or in law, or vexatious, as determined by the court."  Miss. Code Ann. § 11-55-3(a)(Rev. 2002). The term "frivolous" as used in this section takes the same definition as it does under Rule 11: a claim or defense made "without hope of success."  *See **Smith v. Malouf***, 597 So. 2d 1299, 1303-04 (Miss. 1992); ***Deakle***, 661 So. 2d at 196.  Only the first two grounds appear to be at issue in this case.  The chancellor made findings as required by Section 11-55-7.

_____

[5]While section 11-55-5(1) does not contain such a limit as in Rule 11, several cases which discuss the award of sanctions under the Litigation Accountability Act explicitly award the judgment of attorney's fees to a party. *See e.g., **In re Estate of Ladner v. Ladner***, 909 So. 2d 1051, 1055 (Miss. 2004) ("The chancellor, in finding that the Litigation Accountability Act and M.R.C.P. 11 had been violated, awarded $ 2500 in attorneys fees and expenses to [the defendant] to be paid by [plaintiffs].");***Wheeler v. Stewart***, 798 So. 2d 386, 394 (Miss. 2001) ("Finding no error in the circuit court's decision to grant summary judgment and award attorney's fees [pursuant to the Litigation Accountability Act] to [the defendant], this Court affirms the judgment of the Forrest County Circuit Court.")

¶27. The chancellor's grounds for her findings under the Litigation Accountability Act can be broken down into three "claim or defense" categories: (1) Spencer's numerous filings on behalf of the mother to have the custody of the children returned to the mother and alleging that the father abused their daughter, (2) Spencer's representation on behalf of the grandmother and her claim for grandparents' visitation, and (3) Spencer's claims and defenses with respect to the gag order and Section 41-21-151. After reviewing the record, we find evidence supporting the chancellor's findings that the claims concerning the dissemination of the daughter's medical records and custody claims were without substantial justification. We decline to address the chancellor's finding that the grandparents' visitation claim was without substantial justification as this is the subject of a separate appeal pending before this Court. We affirm the judgment of the chancellor finding Spencer liable for sanctions under the Litigation Accountability Act.

     *B.    Rule 11 Sanctions*

¶28. As noted above, Rule 11 permits a court to award a responding party reasonable attorneys' fees and expenses when "any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay." Miss. R. Civ. P. 11(b). As the rule suggests, sanctions are appropriate under this rule only when a motion or pleading has been filed. This Court has stated that a pleading is frivolous "only when, objectively speaking, the pleader or movant has no hope of success." *City of Madison v. Bryan*, 763 So. 2d 162, 168 (Miss. 2000) (quoting *Tricon Metals & Servs., Inc. v. Topp*, 537 So. 2d 1331, 1335 (Miss. 1989)). A motion or pleading is filed for the purpose of harassment or delay when the party does not have a viable claim. *Deakle*, 661 So. 2d at 195.

¶29. The chancellor examined several pleadings filed by Spencer and ruled as to each. Specifically, the chancellor found the (Second) Motion to Return Custody to Mother and the Amended (Second) Motion to Return Custody to Mother to be harassment in light of the court's holding that such arguments were premature when the guardian ad litem had not yet filed his report. The chancellor also found Spencer's Motion to Require Guardian Ad Litem to File Report Returning Custody to [the mother] to be additional harassment of the guardian ad litem and unnecessary. The chancellor found Spencer's motions to lift the gag order to be frivolous because they had no hope of success under Section 43-21-151(1)(c). Finally, the chancellor found that Spencer's Motion to Disqualify and Remove Guardian ad litem, filed the first day of trial, to be "without a doubt frivolous."

¶30. We reviewed each of these pleadings and the explanation offered for each filing. We also understand the posture of the case at the time when Spencer filed them. While we agree that Spencer's initial effort to have the children returned to their mother may have been a good-faith effort to reduce the trauma to the children caused by separation from their custodian, the subsequent pleadings crossed the line. After our review of the record, we cannot say the chancellor abused her discretion in finding the several pleadings filed by Spencer constituted "harassment" under the Rule. Therefore, we affirm the chancellor's judgment finding Spencer liable for attorneys' fees and costs under Rule 11 of the Mississippi Rules of Civil Procedure.

¶31. While we affirm Spencer's liability for attorneys' fees and costs under the Litigation Accountability Act and Rule 11, we find plain error in the chancellor's judgment awarding fees and costs in excess of the amounts actually incurred. Therefore, we vacate the judgment

13

of the chancellor which awarded $25,000 each to the guardian ad litem and counsel for the father, and remand for a factual finding of the amount of reasonable attorneys' fees and costs for the father and the guardian ad litem associated with responding to the claims and motions identified by the chancellor in her order.

**II.     WHETHER THE CHANCELLOR ERRED IN HOLDING SPENCER IN CRIMINAL CONTEMPT OF COURT FOR FAILING TO APPEAR AT A SCHEDULED HEARING WHERE THE EVIDENCE FAILS TO SHOW A WILLFUL FAILURE TO APPEAR AND WHERE SPENCER'S TRIAL LACKED FUNDAMENTAL ELEMENTS OF DUE PROCESS.**

¶32.   Spencer next argues the chancellor erred in holding her in constructive criminal contempt for failing to appear at a hearing she noticed.  She claims she received no notice that she would be found in contempt for this act prior to the sanctions hearing in February. She asserts that her failure to appear in court was not willful, therefore, the court erred in holding her in criminal contempt.  She further argues that the law required her contempt hearing to be held in public.  Finally, she claims the chancellor should not have presided over this portion of the contempt hearing because she had substantial personal involvement in its prosecution.  The chancellor cited Rule 1.05 of the Uniform Chancery Court Rules as grounds to hold Spencer in contempt, and she drew her authority to impose the $100 fine and twenty-four-hour sentence from Section 9-1-17 of the Mississippi Code, which allows a maximum $100 fine and/or thirty days imprisonment. We find none of Spencer's arguments meritorious.

¶33.   Uniform Chancery Court Rule 1.05 provides:

> When any civil action has been set for, or adjourned to, a particular day or hour, all officers, parties, witnesses and solicitors whose presence is

14

necessary for the trial shall be present promptly at the time set. Any negligent
or willful failure to obey this rule shall be punished by contempt.

UCCR Rule 1.05. To hold a contemnor in contempt, the contemnor must be provided a specification of the charges against him, notice, and a hearing. *Purvis*, 657 So. 2d at 798. We first address Spencer's arguments concerning notice and willfulness.

¶34. Spencer did not raise an objection to her lack of notice or specification of the charges at the pre-trial hearing on contempt and sanctions. She argued the merits of this contempt at the pre-trial hearing, and the chancellor permitted her to call witnesses in her own defense. She did not object to testimony about her failure to appear on this date or move for a continuance in order to prepare to respond to this charge. We find that Spencer waived her right to notice and specification of the charge against her. *See Dennis*, 824 So. 2d at 610-11; *Isom v. Jernigan*, 840 So. 2d 104 (Miss. 2003). As the plain text of the rule indicates, an attorney need only be negligent in failing to appear for the chancellor to give grounds for holding her in contempt. Since there is no requirement that Spencer's conduct be willful under this rule, we find no merit to her argument that the contempt judgment should be set aside for lack of willfulness on her part.

¶35. Spencer argues that her contempt hearing should have been held in public and cites *In re Oliver*, 333 U.S. 257, 68 S.Ct. 449, 92 L.Ed.2d 682 (1948), for the rule that criminal contempt trials cannot be held in secret, grand-jury-style proceedings where the accused is denied the benefit of counsel and the presence of friends and relatives. *Id.* at 333 U.S. 271-72. In that case, a witness called to testify at a one-judge grand jury proceeding was found in contempt and sentenced to prison immediately after his testimony because it did not "jell"

with other testimony given before the judge. In finding this procedure violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution, the Supreme Court stated,

> But, unless in Michigan and in one-man grand jury contempt cases, no court in this country has ever before held, so far as we can find, that an accused can be tried, convicted, and sent to jail, when everybody else is denied entrance to the court, except the judge and his attaches. And without exception all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged. In *Gaines v. Washington*, 277 U.S. 81, 85-86, this Court assumed that a criminal trial conducted in secret would violate the procedural requirements of the Fourteenth Amendment's due process clause, although its actual holding there was that no violation had in fact occurred, since the trial court's order barring the general public had not been enforced. Certain proceedings in a judge's chambers, including convictions for contempt of court, have occasionally been countenanced by state courts, but there has never been any intimation that all of the public, including the accused's relatives, friends, and counsel, were barred from the trial chamber.

*Id.* (footnotes removed). "Cases within the jurisdiction of courts martial may be regarded as an exception. Whatever may be the classification of juvenile court proceedings, they are often conducted without admitting all the public. But it has never been the practice wholly to exclude parents, relatives, and friends, or to refuse juveniles the benefit of counsel." *Id.* at 266 n.12 (citations removed).

¶36. We find this matter distinguishable from *In re Oliver*. Spencer had separate counsel to represent her interests at the hearing on contempt and sanctions. She did not object to the private nature of the hearing at the time it occurred. The court permitted her to call witnesses in her defense and to testify on her own behalf. Finally, the chancellor rescinded the portions of her contempt order sentencing Spencer to imprisonment. The precedent Spencer cites makes allowance for the fact that youth court proceedings are different from matters

16

generally before the court. We find that it is not a violation of the Due Process Clause of the Fourteenth Amendment to hold contempt hearings in youth court abuse proceedings out of the public eye under these circumstances.

¶37. Finally, Spencer argues the chancellor should have recused herself from hearing this contempt charge. She argues the chancellor became personally and substantially involved in the prosecution of this contempt charge, such that another judge should have been appointed to consider it. *Mayberry v. Pennsylvania*, 400 U.S. 455, 465-66, 91 S. Ct. 499, 505, 27 L. Ed. 2d 532 (1971). On this charge, we disagree. Spencer filed a notice for a hearing which she completely failed to attend. The next time Spencer appeared before the chancellor, the chancellor took up this contempt charge, among others. At the conclusion of the chancellor's consideration of this matter, she sentenced Spencer to pay a $100 fine or be incarcerated for twenty-four hours, a sentence substantially below the maximum allowed by statute.

¶38. After reviewing the record, we find the chancellor did not become substantially involved with the prosecution of this contempt charge such that we doubt the chancellor maintained the detachment necessary for ruling on this contempt. *See Purvis v. Purvis*, 657 So. 2d 794, 798 (Miss. 1994). The sentence further supports this conclusion. Therefore, we affirm the judgment and sentence of the chancellor finding Spencer in contempt for failing to appear at the January 9 hearing.

**III. WHETHER THE CHANCELLOR ERRED IN HOLDING SPENCER IN CRIMINAL CONTEMPT FOR PROVIDING HER CLIENT THE GRANDMOTHER COPIES OF COURT FILES BEFORE THE PRE-TRIAL MOTIONS AND TRIAL ON THE MERITS AND AFTER TRIAL ON THE MERITS.**

17

¶39. Spencer next argues that the chancellor erred in finding her in constructive criminal contempt for violating the Youth Court Act and the gag order entered by the chancellor on September 20, 2005. She raises as error the same arguments concerning notice, the requirement of a detached chancellor and a public trial. She also raises a challenge to the sufficiency of the evidence of her guilt. The rules discussed above serve as a basis for analyzing Spencer's claims under this argument and will not be repeated here. We now address her arguments concerning notice, the impartiality of the chancellor, and due process.

¶40. The record reflects the guardian ad litem sought to hold Spencer in contempt for supplying his report to the grandmother, because the grandmother sent the report to the Mississippi Bar when filing a complaint against him. In post-trial motions, the father sought to have Spencer held in contempt for the appearance of confidential information on the internet. We find both pleadings provided Spencer sufficient notice of this contempt charge against her. We also note that she appeared and defended herself through counsel against these charges. By taking these actions, Spencer waived whatever deficiency existed with respect to the notice. *See Dennis*, 824 So. 2d at 610-11; *Isom*, 840 So. 2d at 106.

¶41. Furthermore, the chancellor did not prosecute these contempt charges. From the record, we can find no indication the chancellor became substantially involved in the prosecution of this contempt charge. *See In re Williamson*, 838 So. 2d 226, 237 (Miss. 2002). We find no error in the fact the chancellor did not recuse herself from hearing these contempt charges. For the reasons discussed above, we find no due-process violation occurred simply because the contempt hearing was subject to the confidentiality statutes

18

applicable to proceedings in Youth Court. None of these grounds have merit. We now examine the sufficiency of the evidence.

¶42. The gag order entered by the chancellor on September 20, 2005, provided, "The parties themselves will be enjoined from disclosing any information to third parties and that injunction would go towards their agents as well." The written order entered by the chancellor on November 9 provided, inter alia: "Neither the Parties, nor their attorneys, nor their agents shall discuss the proceedings in this Court with any person not directly associated with the Parties or their attorneys."

¶43. We reviewed the verbal and written gag orders and find them too vague to enforce. *See* ***Mayor of Clinton v. Welch***, 888 So. 2d 416, 420-24 (Miss. 2004). We are particularly unable to determine with reasonable certainty whether the grandmother qualifies as a "third party" or "agent" under the chancellor's first order or a "person not directly associated with the Parties or their attorneys" under the chancellor's written order. We conclude these orders are not sufficiently explicit or clear to give fair notice to men of common intelligence of the conduct which would offend these orders. *Id.* at 422. Therefore, the chancellor's judgment holding Spencer in contempt for violating these orders is in error. We next examine whether the facts support the chancellor's contempt judgment against Spencer for violating the Youth Court Act.

¶44. Section 43-21-151(1)(c) of the Mississippi Code allows the chancery court to assume jurisdiction over a youth court matter under certain circumstances. Miss. Code Ann. §43-21-151(1)(c) (Rev. 2004). "The proceedings in chancery court on the abuse charge shall be confidential in the same manner as provided in youth court proceedings." *Id. See also* Miss.

19

Code Ann. §§ 43-21-203(6); 43-21-257(1); 43-21-259 (Rev. 2004). Section 43-21-153(2) gives the youth court the power to hold in contempt of court a party who willfully violates, neglects, or refuses to obey an order and to issue a fine not to exceed $500 and/or to imprison the violator for not more than ninety days. Miss. Code Ann. § 43-21-153 (Rev. 2004).

¶45. The chancellor held Spencer in contempt for providing the grandmother copies of chancery court filings and orders in violation of the gag order. The chancellor split the contempt in two: the violation which occurred before the trial and the one that occurred afterward. In the contempt order, the chancellor identified only one instance in which Spencer supposedly disclosed confidential information to the grandmother and violated the gag order. This was in an electronic mail message from Spencer to the mother and grandmother in January 2006, to which Spencer attached copies of the order compelling the mother's appearance at trial, the father's motion for sanctions, motion to strike defenses, and witness subpoenas, and the guardian ad litem's second interim report and motion for sanctions. The chancellor fined Spencer $500 and ordered her to be incarcerated for ninety days for the violation before trial. The chancellor imposed an identical sentence for the violation after trial. In that case, the chancellor relied upon Spencer's admission that she sent a copy of the court's "Bench Opinion and Judgment" regarding custody to the grandmother.[6] On reconsideration, the chancellor vacated the portions of her order that sentenced Spencer to imprisonment.

---

[6]We are troubled that a chancellor would order Spencer's attorney to review Spencer's files for evidence related to this sanction and then report such evidence back to the court. For reasons unknown to us, this is not alleged as error on appeal.

20

¶46. The guardian ad litem filed a motion to hold Spencer in contempt for disseminating his second interim report prior to the date of the electronic mail sent by Spencer. Because the motion pre-dated the electronic mail message in the record, the message cannot serve as a basis for holding Spencer in contempt under the charge made by the guardian. Furthermore, while Spencer's email did include the guardian's report, arguably a youth court record, it was directed to the mother. Spencer's unrebutted testimony was that, by sending a courtesy copy of this mail message to the grandmother, she hoped to place the documents in the mother's possession. At that time, it had been more than a month since Spencer had had contact with the mother. The record indicates the grandmother paid Spencer for her representation of the mother. The grandmother herself was Spencer's client and had a right to be informed of the outcome of the custody hearing. We find the evidence insufficient to show that Spencer's conduct was a willful or contumacious violation of the Youth Court Act beyond a reasonable doubt. We therefore reverse the judgment of the chancellor holding Spencer in contempt for violating the gag orders and Youth Court Act, and hereby render judgment in favor of Spencer.

## IV. WHETHER THE CHANCELLOR ERRED IN HOLDING SPENCER IN CONTEMPT FOR ISSUING SUBPOENAS DUCES TECUM IN VIOLATION OF MISSISSIPPI CODE ANNOTATED § 43-21-151.

¶47. Spencer finally argues the chancellor erred in holding her in contempt for causing several subpoenas to issue after the December 5 hearing. She asserts the chancellor erred because Spencer's trial was not public, that Spencer was not given adequate notice of the charge against her, and that the chancellor should not have sat in judgment. For the reasons discussed above, we find no merit to the argument that the chancellor's judgment holding

21

Spencer in contempt should be set aside because it was made while under the confidentiality provisions of the Youth Court Act. We also find, for the reasons discussed above, that Spencer waived the requirement that she be given notice, because she argued the merits of her case without objecting to the lack of notice at the hearing. However, we agree it was error for the chancellor to sit in judgment of this contempt charge.

¶48. The conduct for which the chancellor held Spencer in contempt occurred both in the chancellor's presence and outside the chancellor's perception. Spencer made the misrepresentation concerning the nature of the subpoenas in person to the chancellor to obtain her approval to have them issued. The language which appeared within the subpoenas and the request that the respondent produce documents were facts outside the chancellor's personal knowledge. Therefore, we find the judgment of contempt against Spencer for violating the order regarding subpoenas is criminal in nature and is one of constructive, rather than direct, contempt. *See **Dennis***, 824 So. 2d at 608-609. *Cf. **In Interest of Holmes***, 355 So. 2d 677, 678 (Miss 1978) ("where there is doubt whether the alleged contempt was direct or constructive, it should be regarded as the latter"). As we stated in ***Dennis***:

> If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil. The contemnor may be jailed or fined for civil contempt; however, the contemnor must be relieved of the penalty when he performs the required act. Criminal contempt penalties, on the other hand, are designed to punish the defendant for disobedience of a court order; punishment is for past offenses and does not terminate upon compliance with court order.

***Dennis***, 824 So. 2d at 608 (citations removed). As noted above, this Court reviews criminal contempt citations *ab initio*.

¶49.   After Spencer caused several subpoenas to be issued for the September 20 trial and the hearing on the motion to quash the hospice subpoena, the chancellor enjoined Spencer from causing more subpoenas to issue.  The chancellor stated on the twentieth, "I will go ahead and enter a blanket order that requires all subpoenas to be approved by the Court before they are issued. . . ."  A later written order provided, "[The mother] shall not issue additional subpoenas with [sic] prior approval of this Court. . . ."

¶50.   At the December 5 hearing, Spencer asked the court's permission to issue trial subpoenas for the upcoming trial date:

> [MS. SPENCER]:  May I go ahead and have my trial subpoenas issued?
> THE COURT: Okay. What all are they for?
> MS. SPENCER: Just for a variety of individuals to - -
> THE COURT: Have you given them to Mr. Parrish?
> MS. SPENCER: No, I have not.
> THE COURT: I mean, we had some problems with subpoenas before.  These are just witness subpoenas?
> MS. SPENCER: These are witness subpoenas.
> THE COURT: Any problem with that Mr. Kramer?
> MS. SPENCER: I mean, Your Honor, he can file a motion to quash and then it can be heard on January 9 and it could be resolved prior to trial so what could be the harm?
> THE COURT: Well, I don't see a problem with witness subpoenas being issued.  Do you, Mr. Kramer?  I mean, there was some problem with the subpoena duces tecum - -
> MS. SPENCER: Yes.
> THE COURT:  - - before.
> MS. SPENCER: Yes, there were.
> MR. KRAMER: Yes, ma'am.
> THE COURT: Go ahead and get the subpoenas issued.  I don't have a problem with that.

Counsel for the father was not present at this hearing.  Spencer next caused four subpoenas entitled "Trial Subpoena and Subpoena Duces Tecum" to issue from the chancery court directed at four DHS employees:  (1) Jackie Odom; (2) John Webb O'Bryant, DHS regional

23

director; (3) Lisa Robinson; and (4) Brunette Jones, the caseworker for the daughter. The subpoenas commanded them to be present at trial and to produce documents. The subpoenas described the documents as "[t]he July 2004 investigation file maintained by the DHS concerning [the daughter's] sexual abuse which occurred in approximately June and July 2004, including but not limited to the investigation, any conclusions, the original or a copy of [the daughter's] note and drawing of an erect penis which stated, 'For Mamma's eyes only; my privates hurt real bad', and all other documents contained in the file and a copy of the DHS file concerning [the daughter] and [the son] being placed in foster care." She also caused one subpoena to issue for the Quitman School District.

¶51. In holding Spencer in contempt, the chancellor held the following:

> In issuing the above subpoenas duces tecum, Attorney Spencer made a material misrepresentation to this Court and violated this Court's order that Subpoena Duces Tecum be submitted to the Court for review and approval prior to their issuance. By including the graphic language in [the exhibit to the summons], she also disseminated confidential information from this civil action in violation of § 43-21-151(1)(c).

> She exposed that information not only to the subpoenaed witnesses, but also the process server hired to serve the subpoenas. Such conduct on the part of an attorney of law cannot go unpunished. It should also be noted that the "drawing of the erect penis" is Attorney Karen Spencer's interpretation of the daughter's drawing on the note she gave her mother. Donna Moore, the first counselor that talked to the daughter, reported that the child described the drawing as a girl with long hair. The daughter had drawn tears on the girl's face, and was afraid she would upset her mother so she blacked out the face and drew smiley faces around the drawing.

¶52. The chancellor fined Spencer $100 for causing a subpoena directed to Quitman School District to issue without prior court review or approval, but which did not reveal confidential information. The chancellor fined Spencer $500 and sentenced her to ninety days

24

imprisonment for each subpoena, for causing subpoenas to issue which were directed to the DHS employees. Finally, the chancellor's order was to be sent to the Mississippi Bar. On reconsideration, the chancellor vacated that portion of her judgment which sentenced Spencer to imprisonment.

¶53. Prior to the hearing on contempt, neither the father nor the guardian ad litem requested the chancellor hold Spencer in contempt for violating the chancellor's order regarding subpoenas. While Spencer waived notice of this contempt charge by appearing and defending herself through separate counsel, it appears from the record that the chancellor instigated and prosecuted this contempt charge. It was improper for the chancellor to sit in judgment where she had substantial personal involvement in the prosecution of this charge. *In re Williamson*, 838 So. 2d 226, 237 (Miss. 2002). Therefore, we find the chancellor should have recused herself from hearing this contempt matter. The chancellor's contempt judgment finding Spencer violated the order regarding subpoenas is hereby reversed, and this charge is remanded for a new trial. *Id.*

## CONCLUSION

¶54. For the reasons discussed above, we find the chancellor abused her discretion when awarding monetary sanctions against Karen Spencer in excess of the amount authorized by the Litigation Accountability Act and Rule 11 and awarding those sanctions to the father's attorney instead of to the father. We vacate the sanction judgment and remand this matter for a finding as to the reasonable amount of attorneys' fees and costs incurred by counsel for the father and the guardian ad litem for responding to the claims and pleadings examined in the chancellor's order. The reasonable amount of attorneys' fees shall be awarded to the

25

father. The judgment holding Spencer in contempt for failing to appear at the January 9 hearing is affirmed. The judgment holding Spencer in contempt for violating the gag order is not supported by the substantial evidence and is reversed. Judgment is hereby entered in favor of Karen Spencer on this charge. Since it was error for the chancellor to sit in judgment on the charge of contempt for violating the chancellor's order regarding subpoenas, this judgment is reversed and this charge is remanded for a new trial.

¶55. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART; AND VACATED AND REMANDED IN PART.**

**SMITH, C.J., CARLSON, GRAVES, DICKINSON AND LAMAR, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, P.J., AND RANDOLPH, J., NOT PARTICIPATING.**