IRVING, P.J.,
dissenting:
¶ 28. The majority finds that the chancery court did not abuse its discretion when it found that Mayor McAdams’s suit against five members of the Greenwood City Council (City Council) in their individual capacities was not frivolous and declined to award sanctions. Because I believe that the Mayor’s lawsuit against the couneilmen in their individual capacities-but not in their official capacities-was frivolous, I believe the chancery court erred in refusing to award sanctions. Therefore, I dissent. I would reverse the chancery court’s judgment and remand this case for an award of sanctions.
¶ 29. The City of Greenwood (City) operates under the mayor-council form of municipal government. See Littleton, 60 So.3d at 170 (¶ 5). Under this form of municipal government, the governing authorities are vested with the authority to appoint the city attorney. Miss.Code Ann. § 21-15-25 (Rev.2007). The “city council has no authority to appoint.” Jordan, 669 So.2d at 757 (overruled in part on other grounds). Since the city council lacks appointing authority, it is clear that authority rests solely with the mayor. However, “nothing in our statutes or precedents denies the [city] council an ad *938 vice[-]and[-]consent role in the appointive process.” Jordan, 669 So.2d at 757. The City enacted an ordinance whereby the mayor would appoint the city attorney subject to confirmation by the city council. Id. at 753-54. Mayor McAdams, nominated the law firm of Abraham and Rideout for the position of city attorney. However, by virtue of the previously mentioned city ordinance, Mayor McAdams’s nomination was subject to confirmation by the majority of the City Council.
¶ 30. At its July 7, 2009 meeting, the City Council voted 5-2 to reject Mayor McAdams’s nomination of Abraham and Rideout.[1] In response, Mayor McAdams filed suit against the five councilmen who voted against her nomination. However, Mayor McAdams sued the councilmen only in their individual capacities and not in their official capacities, although she brought the suit in her official capacity as mayor.
¶ 31. The majority asserts:
Fortunately, we are not called upon to rule on the propriety of the decision to sue the councilmen individually. The issue before us is, instead, whether the suit was frivolous, or more precisely, whether the councilmen have shown that the chancery court abused its discretion in finding that the suit was not frivolous. As the councilmen have failed to cite any authority showing that suing the councilmen individually rendered the suit frivolous, this argument is without merit.
Maj. Op. at (¶ 18). The propriety of the Mayor’s decision to sue the councilmen in their individual capacities is the foundational issue that must be decided as a part of reaching the ultimate issue of whether the chancery judge abused his discretion in declining to award sanctions. If the relief sought could not be granted against the councilmen because they were not brought into court in the proper legal posture, how can it be said that the lawsuit was not frivolous? Even if Mayor Mc-Adams had amended her lawsuit to correct the defect, that would not preclude a finding that the lawsuit filed was frivolous. It seems clear to me that when a city councilman casts his vote at a city council meeting to confirm or reject a mayor’s nominee for city attorney, he can only be acting in his official capacity.
¶ 32. A court may impose sanctions against a party or his attorney “[i]f any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay....” M.R.C.P. Rule 11(b). “A pleading or motion is frivolous within the meaning of Rule 11 only when, objectively speaking, the pleader or movant has no hope of success.” Estate of McLemore, 63 So.3d at 490 (¶ 67) (quoting Tricon Metals & Servs., Inc. v. Topp, 537 So.2d 1331, 1335 (Miss.1989)).
¶ 33. A city ordinance required the City Council to vote on the Mayor’s nominee for city attorney. Therefore, Mayor Mc-Adams’s lawsuit challenged conduct that arose solely out of the councilmen’s official duties. Yet, she failed to sue the five councilmen who voted to reject her nominee in their official capacities. This is not a case of a “weak” or “light-headed” lawsuit. In my view, this lawsuit is frivolous given that Mayor McAdams had “no hope of success” against the councilmen in their individual capacities.
¶ 34. I can think of no reason why Mayor McAdams needed to make anyone other than Littleton a defendant in the lawsuit. She sought to enjoin him from *939 representing the City. In her complaint, the Mayor stated:
Notwithstanding the Mayor’s express termination of Mr. Littleton, at the next [City] Council meeting held on or about July 7, 2009, Mr. Littleton attended and purported to continue to act as the Greenwood City Attorney. He further announced his intention to those assembled and the world at large that, regardless of what the Mayor might prefer, he was going to continue to serve as the Greenwood City [A]attorney unless and until his successor had been appointed by the Mayor and approved by the [City] Council.
The Mayor’s complaint does not allege that the five councilmen, in either their individual or official capacities, did something that impacted or impeded the operation of the municipal government or that they ordered him to continue to serve as city attorney after she had terminated his services. It is of no moment that they might have thought that Littleton was entitled to hold over. Interestingly, Mayor McAdams makes this point in her complaint:
At the same [City] Council meeting (reference is to the meeting where Littleton announced his intentions), the five defendants named above voted to turn down the Mayor’s nomination of the law firm of Abraham [and] Rideout to serve during the upcoming year as the city attorney for the [C]ity of Greenwood and further announced they were satisfied with Defendant Littleton and, at a minimum, implied by their silence that as a holdover he could continue to serve until his successor had been appointed by the Mayor and approved by the [City] Council.
The councilmen’s announcement that they were satisfied with Littleton’s service did not equate to an order directing him to continue to serve. At most, it simply indicated that they saw no need for changing attorneys, although they recognized the Mayor’s right to make a change, subject to their right of confirmation of whomever she nominated. Also, the fact that the councilmen voted to reject the Mayor’s choice for city attorney was nothing more than a proper exercise of their legislative power.
¶ 35. Perhaps the best indication of Mayor McAdams’s purpose for bringing the lawsuit was revealed by one of her attorneys during the hearing on her complaint:
If this Court does what I think it should do, and says there is no city attorney, what that is going to force these two branches of government to do is compromise toward the middle. If you leave somebody in office that one branch of government clearly wants and the other one doesn’t, there is simply no motivation to try to compromise.
When the attorney’s statement is properly parsed, one can come to only one conclusion: Mayor McAdams’s motivation for bringing the lawsuit against the councilmen was to harass them, force them to yield, and give her the attorney of her choice. Again, I reiterate that Littleton could have been enjoined from acting as city attorney without making the councilmen defendants in the action.
¶ 36. Based on the above, the chancery court erred in refusing to award sanctions. As such, I dissent.

. The minutes from the City Council’s meeting are not included in the record before this Court. However, the manner in which the councilmen voted is not in dispute.